**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**James C. SENTER and Susan B. Senter, Respondents.**

**Anthony Foster McKISSICK, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

Nos. 7331, 7332.

United States Court of Appeals Fourth Circuit.

Argued Jan. 17, 1957.

Decided March 11, 1957.

F. T. Miller, Jr., Charlotte, N. C. (F. A. McCleneghan and Cochran, McCleneghan & Miller, Charlotte, N. C., on brief), for appellant Anthony Foster McKissick.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Charles B. E. Freeman, Attys., Dept. of Justice, Washington, D. C., on brief), for Commissioner of Internal Revenue.

Before PARKER, Chief Judge, SOPER, Circuit Judge, and WILLIAMS, District Judge.

PARKER, Chief Judge.

These are appeals affecting the income tax liability of Anthony Foster McKissick and his former wife, now Susan B. Senter, for the tax year 1949. In that year, the sum of $43,485.27 was paid to Mrs. Senter, pursuant to a separation agreement. McKissick contends that this was a "periodic" support payment for which he was entitled to a deduction under section 23(u) of the Revenue Code of 1939, 26 U.S.C.A. § 23(u). The Tax Court held that the amount was not taxable to Mrs. Senter as income under section 22(k) and that he was not entitled to the deduction. McKissick has appealed from the decision against him and the Commissioner has taken a protective appeal in the case of Mrs. Senter, although contending that the decision of the Tax Court is correct in both cases.

The statutes applicable provide that periodic payments made to a wife who is divorced or legally separated from her husband under a divorce or separation agreement, shall be includible in the gross income of the wife and shall constitute a deduction for the husband.[1]

---

1. Sec. 22(k). "Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic

Under a separation agreement entered into in August 1948 McKissick assigned to his wife, for the support of herself and minor son, one-third of the amount that he was entitled to receive from the estates of his grandfather and grandmother, with a further agreement that if she should obtain a divorce and remarry he would pay her a cash sum equal to what she would be entitled to receive under the agreement for a three-year period. The provision with respect to the cash payment is as follows:

"(e) It is understood and agreed that the said payment of One-third (⅓) of said rents, issues and income shall cease and determine if and when the said Susan B. McKissick obtains a valid divorce and remarries. If she does secure a valid divorce and remarries, the said Anthony F. McKissick agrees to pay her in cash a sum equal to the total amount which the said Susan B. McKissick has received or become entitled to receive from the aforesaid estates under this contract and agreement for the preceding three (3) years prior to the obtaining of such divorce and remarriage. In the event that the said Susan B. McKissick should obtain a valid divorce and remarry before she has received or become entitled to receive three (3) successive annual payments from said estates, the said Anthony F. McKissick agrees to pay her in cash a sum equal to three (3) times the average annual payments which the said Susan B. McKissick has received or has become entitled to receive from said two estates."

The next paragraph of the agreement provides that, if Mrs. McKissick shall remarry after Mr. McKissick has obtained a divorce from her, "then the annual payments from the two trust estates * * shall cease and determine and the said Anthony F. McKissick hereby agrees to pay to the said Susan B. McKissick the cash settlement hereinabove referred to in the next preceding paragraph." The paragraph following provides that, if Mrs. McKissick shall remarry after a divorce obtained either by her or Mr. McKissick, the latter will pay her "in addition to the cash settlement hereinabove provided for" the sum of $4,000 annually for the support of their infant son until he becomes twenty-one years of age.

payment which the terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In case any such periodic payment is less than the amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. For the purposes of the preceding sentence, the portion of a payment of the principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be considered an installment payment for the taxable year in which it is received. (In cases where such period payments are attributable to property of an estate or property held in trust, see section 171 (b).)"

Sec. 23(u). "Alimony, etc., payments. In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection."

Mrs. McKissick secured a divorce and remarried in November 1949. Prior to that time she had received under the separation agreement sums of $7,500, $2,221.03 and $4,774.06, and it is conceded that these sums were properly treated as "periodic" payments which were properly taxable to her as income and for which Mr. McKissick was entitled to a deduction. It was estimated that upon her divorce and remarriage she was entitled to receive under the separation agreement a lump sum settlement of $43,485.27. This was paid to her and she executed a release to Mr. McKissick and the trustees of the estates from which payments had been made to her, releasing them from all further liability.

■■ On these facts we think it clear, as found by the Tax Court, that the $43,485.27 did not constitute a periodic payment for the support of the wife within the meaning of section 22(k) or 23(u), but that it constituted a lump sum settlement not taxable to the wife as income and not deductible from the income of the husband. The purpose of 22(k) and 23 (u) was to provide for a division of the taxability of income where the income itself was divided between husband and wife pursuant to a divorce or separation agreement, not to tax or to grant deductions with respect to divisions or transfers of property made in final settlement of marital controversies. The difference between the "periodic" payments and the cash settlement here was well stated in the opinion of the Tax Court as follows:

"The first three payments made under covenant 3(a) were for the maintenance and support of the separated wife and for the maintenance, support, education, and care of the minor child. They were to be paid from the estates of the husband's grandparents and under covenant 3 (c) were to be made at the time payments from such estates were to be made to the husband but in any event at least once each year. * * The payment of $43,485.27 made under covenant 3(e) was an entirely different kind of payment. Under that covenant, it was understood and agreed that the payments previously provided for from the estates of the husband's grandparents 'shall cease and determine if and when the said Susan B. McKissick obtains a valid divorce and remarries.' The wife did both; she obtained a valid divorce and she remarried. Therefore, under covenant 3(e), her former husband became obligated to pay her 'in cash a sum' to be determined by means of the last sentence in covenant 3(e) ".

The Tax Court in the prior case of Ralph Norton, 16 T.C. 1216, affirmed 8 Cir., 192 F.2d 960, a case involving an initial cash payment as well as subsequent "periodic" payments, had distinguished such cash payments from the "periodic" payments saying:

"The word 'periodic' is to be taken in its ordinary meaning and so considered excludes a payment not to be made at fixed intervals but in a lump sum, and the fact that the statute made particular reference to periodic payments is some reason to believe that another kind of payment, that is, an initial payment in some larger and undivided amount, was considered in a different category. We may, we think, take judicial notice that divorce settlements or decrees not uncommonly provide some considerable amount payable immediately to the wife, in addition to regular or recurring payments for current support thereafter. We consider it reasonable to believe that Congress had such a practice in mind and did not intend to make the wife taxable upon the lump sum, original, or principal payments to be made here, *but that it was something in the nature of division of capital, rather than from the husband's income so as to be deductible by him.* At any rate, we think Congress failed to provide that such a payment was 'periodic' and that, therefore, it is not within the statute." (Italics supplied).

See also Baer v. Com'r, 16 T.C. 1418, affirmed 8 Cir., 196 F.2d 646; Haag v. Com'r, 17 T.C. 55; Cattier v. Com'r, 17 T.C. 1461; Herbert v. Riddell, D.C., 103 F.Supp. 369, 387. While these cases deal with lump sum initial payments, the difference is of no consequence. If anything, the case here is stronger than they are for the non-applicability of 22(k) and 23(u) of the Code; for there the periodic payments went on notwithstanding the payment of the lump sum in cash. Here it is expressly provided that the periodic payments were for the maintenance and support of the wife and minor child, were payable out of income receivable by the husband from two trust estates, and that they were to cease upon the event upon which the lump sum cash settlement was to be paid.

We are in entire accord with the reasoning of the Tax Court in this case and the other cases cited above; and we find nothing to the contrary in the cases relied upon by taxpayer. These are concerned with distinguishing between periodic payments, such as the statute contemplates, and the payment of a cash settlement in installments. There has never been any trouble in distinguishing between a single cash settlement such as is involved here and the "periodic" payments which the statute contemplates. The trouble has arisen where the cash settlement provides for a number of installment payments or where the effort is made to give periodic payments, which are made for the support of the wife, the appearance of a cash settlement payable in installments. The statute provides that installment payments extending beyond a ten year period from the date of the decree or separation agreements are to be deemed "periodic" payments to the extent that they do not exceed 10 per cent of the principal sum. A line of cases, of which Baker v. Commissioner, 2 Cir., 205 F.2d 369 may be taken as typical, holds that, notwithstanding this provision, where the payments are to extend over a period of less than ten years they are to be treated as "periodic" payments if they are not in fact payments of a principal sum in installments and are to terminate upon death or remarriage. The rationale of this line of decisions is adopted in the Commission's regulation 1.71–1(d) (3) (i) [2] published in 1956 with respect to the Internal Revenue Code of 1954. This regulation, of course, is not applicable here; but cases upon which it is based have no possible application because the $43,485.27 is not an installment payment, and is not paid as an allowance for support, but is a lump sum cash settlement in the nature of a division of property made in lieu of support.

Affirmed.

2. "Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions:

"(a) Such payments are subject to any one or more of the contingencies of death of either spouse, and

"(b) Such payments are in the nature of alimony or an allowance for support."