WILLIAM V. AND MARY JO BERNARD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

BETH ANN BERNARD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4235-83, 4574-83.    Filed November 12, 1986.

*Dan L. Shehi,* for William V. and Mary Jo Bernard, the petitioners in docket No. 4235-83.

*Montie Day,* for Beth Ann Bernard, the petitioner in docket No. 4574-83.

*Edward I. Kaplan,* for the respondent.

FAY, *Judge:* Respondent determined deficiencies in petitioners' 1977 Federal income tax. After concessions, the issue for decision is the tax treatment of a lump-sum payment made by a former husband to his former wife in

discharge of his past and future child and spousal support obligations where the amount of the payment is greater than the support arrearages.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation and exhibits attached thereto are incorporated herein by this reference.

Petitioner Beth Ann Bernard (hereinafter petitioner wife) resided in Moraga, California, at the time she filed her petition herein. Petitioners William V. Bernard (hereinafter petitioner husband) and Mary Jo Bernard, petitioner husband's then current wife, resided in Orinda, California, at the time they filed their petition herein.

Petitioner wife and petitioner husband were married June 20, 1948, in Berkeley, California. On May 10, 1974, petitioner wife filed a petition with the Superior Court of California, County of Contra Costa (hereinafter Contra Costa Court), seeking dissolution of her marriage to petitioner husband. In the petition for dissolution, petitioner wife requested the court to award her child support for Kristen, her and petitioner husband's then minor child, and spousal support.

The Contra Costa Court entered a "Memorandum of Decision" on January 22, 1975. The memorandum of decision stated that the marriage between petitioner wife and petitioner husband "will be ordered dissolved on the ground of irreconcilable differences," and discussed issues relating to settlement of the community and child and spousal support. As is here relevant, the memorandum of decision indicated that petitioner husband was to pay $200 per month in child support until Kristen was 18 years of age[2] or until further order of the court. The memorandum of decision further provided that petitioner husband was to

---

[1] At trial petitioner wife's counsel orally moved, on the basis of irrelevancy, to exclude certain documents which pre-date Aug. 12, 1977, the date on which petitioner wife and petitioner husband entered into a stipulation and waiver agreement. Ruling on the motion was postponed. It is hereby denied because the documents which are sought to be excluded are relevant to the amount of support arrearages due at the time petitioner wife and petitioner husband entered into the stipulation and waiver agreement.

[2] Kristen was born on Dec. 20, 1959, and, accordingly, became 18 years of age on Dec. 20, 1977.

pay to petitioner wife $1,300 per month for 2 years, and commencing on February 1, 1977, $950 per month thereafter. The monthly payments were contingent upon the death or remarriage of petitioner wife or further order of the court.

On April 28, 1975, the Contra Costa Court entered an Interlocutory Judgment of Dissolution of Marriage. The interlocutory judgment substantially incorporated the terms of the memorandum of decision. The only difference, as is here relevant, between the memorandum of decision and the interlocutory judgment is that the decrease in monthly spousal support from $1,300 per month to $950 per month was not to occur until May 1, 1977.

On July 14, 1975, the Contra Costa Court entered a Final Judgment of Dissolution of the marriage between petitioner wife and petitioner husband. The final judgment does not contain any of the provisions contained in the memorandum of decision or the interlocutory judgment. It merely dissolves the marriage between petitioner wife and petitioner husband.

On May 23, 1977, petitioner wife filed with the Contra Costa Court a document entitled "Points and Authorities in Support of Motion to Distribute Proceeds Pursuant to Interlocutory Decree."[3] Attached to the points and authorities is a support summary entitled "Child and Spousal Support Owed Through March 1977" (hereinafter referred to as support summary). The support summary indicates that petitioner husband should have paid, through October of 1976, $26,100 in child and spousal support.[4] The support summary recognizes payment during this period by petitioner husband in the amount of $20,730. Of this amount, $7,250 was "paid" and $13,480 was paid on mortgages and taxes on the family residence being occupied by petitioner wife.[5] Although the difference between the amount that should have been paid and the amount paid for this period

---

[3]The record does not contain a copy of petitioner wife's motion to distribute proceeds pursuant to interlocutory decree.

[4]Our computation indicates that $27,000 should have been paid during this period.

[5]Although the record is not clear, it appears that Kristen was at this time living in the family residence as well.

is $5,370, the support summary indicates that "pursuant to stipulation this figure has been adjusted to $5,488."[6]

The support summary further indicates that $7,500 of child and spousal support should have been paid from November of 1976 to March of 1977 and recognizes that $1,200 was paid by petitioner husband during this period. The support summary indicates that the total owed in child and spousal support payments as of March of 1977, taking into consideration payments made by petitioner husband prior thereto, was $11,788.

On June 1, 1977, petitioner husband's attorney prepared a Declaration in Support of Motion to Distribute Proceeds.[7] Attached as Exhibit VI thereto was a document entitled "Support Recap." The support recap indicates that from May 1, 1975, to October 30, 1976, petitioner husband should have paid $27,000 to petitioner wife for child and spousal support.[8] The support recap also indicates that $21,512 was paid by petitioner husband during this period, $8,750 paid directly to petitioner wife and $12,762 on mortgages and taxes.[9] Thus the support recap shows a balance owed, as of October 30, 1976, in the amount of $5,488.

The figures in the support recap for the period of November of 1976 to March of 1977 are identical to the figures contained in the support summary for such period. The support recap indicates that the bottom line amount owed as of March of 1977, taking into account payments made prior thereto, is the exact same amount as the bottom line amount indicated on the support summary, $11,788.

A memorandum of decision was entered by the Contra Costa Court on June 13, 1977, apparently in response to the motions to distribute proceeds. This memorandum of deci-

[6]This figure is the exact amount determined by petitioner husband's attorney to be due as of Oct. 30, 1976. See discussion of the support recap *infra*.

[7]The record does not contain petitioner husband's motion to distribute proceeds.

[8]Although the support recap does not specifically indicate that "support" referred to both child and spousal support, the context and amount convinces us that "support" does refer to both child and spousal support.

[9]Neither the support recap nor the support summary indicates which portion of the payments made by petitioner husband was applied to satisfy spousal support and which portion was applied to satisfy child support. Accordingly, the support recap and the support summary do not indicate which portion of the total arrearages is attributable to spousal support arrearages and which portion is attributable to child support arrearages.

sion does not discuss any issues relating to child or spousal support.

In August of 1977, petitioner husband and petitioner wife signed a document entitled "Stipulation and Waiver." In the stipulation and waiver they agreed that petitioner husband would pay petitioner wife $60,000; that petitioner wife waives "any and all claims for spousal support which may have accrued * * * and all rights which she has to spousal support now and forever"; and that the payment of the $60,000 "is in full settlement of any and all claims arising out of the marriage" of petitioner wife and petitioner husband. On August 31, 1977, the parties filed the stipulation and waiver with the Contra Costa Court and such court entered an order stating that "the Stipulation and waiver agreement entered into between the parties * * * be and hereby is incorporated herein and is hereby made an order of this court." From the text of the agreement, we find that petitioner wife and petitioner husband entered into the agreement to satisfy all past and future child and spousal support.

Petitioner husband paid to petitioner wife $60,000 in 1977. Petitioner wife did not report any of the $60,000 payment from petitioner husband in 1977 on her 1977 Federal income tax return.[10] Respondent determined in a notice of deficiency that petitioner wife received unreported alimony income of $77,508.

Petitioner husband and his then current wife claimed an alimony deduction of $13,050 on their 1977 joint Federal income tax return. In an amended return, they claimed an increase in the alimony deduction of $64,458. Respondent determined in a notice of deficiency that petitioner husband and his then current wife were not entitled to an alimony deduction in any amount.

[10]Petitioner wife claimed a dependency exemption for Kristen on her 1977 return. The parties have stipulated that petitioner wife is entitled to the dependency exemption. The parties have further stipulated that petitioner wife is entitled to use income averaging in 1977 if we determine that she received alimony income in 1977 and is entitled to have her tax liability for 1977 determined under "Head of Household" status. See sec. 1(b).

OPINION

Section 71(a)(1)[11] provides that the gross income of a wife includes periodic payments received by a wife from her divorced or legally separated husband pursuant to a decree of divorce or separate maintenance which is imposed because of the marital or family relationship. Section 71(b) provides that the portions of support payments which the agreement "fixes" to be for child support are not gross income under section 71(a). Section 71(c) provides that installment payments are not periodic payments where they are made to a wife to discharge a specified principal sum over a period of less than 10 years. Section 1.71-1(d)(3), Income Tax Regs., further provides that installment payments are periodic payments, even though discharging a specified debt in less than 10 years, where the payments are contingent on the death of either spouse, the remarriage of the wife, or a change in economic circumstances of either spouse, and are in the nature of alimony or an allowance for support.[12] Section 215(a) allows a divorced or legally separated husband a deduction for payments, in the year and the amount made, which are included in his wife's gross income under section 71.[13]

Where a husband and wife modify a support agreement, at a time when the husband is not delinquent in his payments, such that the husband pays to the wife a lump-sum in satisfaction of his obligation for future support payments, the tax effect of the lump-sum payment is not dependent upon the tax effect of the original payments, but rather turns on whether the lump-sum payment is a periodic payment within the meaning of section 71. *Loverin v. Commissioner*, 10 T.C. 406 (1948).[14] See also *Sechrest v. United States*, 490 F.2d 102 (4th Cir. 1974); *Commissioner v. Senter*, 242 F.2d 400 (4th Cir. 1957), affg. 25 T.C. 1204 (1956).[15] Where there is a mixture of past and future

[11]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[12]See *Clark v. Commissioner*, 58 T.C. 519 (1972).

[13]Our decision is unaffected by amendments made to secs. 71 and 215 by the Tax Reform Act of 1984, Pub. L. 98-369, sec. 422, 98 Stat. 494, 795-799.

[14]See also *Wickworth v. Commissioner*, T.C. Memo. 1978-14.

[15]*Sechrest v. United States*, 490 F.2d 102 (4th Cir. 1974), and *Commissioner v. Senter*, 242 F.2d 400 (4th Cir. 1957), affg. 25 T.C. 1204 (1956), deal with modifications of the original

alimony obligations extinguished by payment of a lump-sum amount, the proper approach is to treat the payment as in satisfaction of unpaid and accrued alimony to the extent thereof. *Olster v. Commissioner*, 79 T.C. 456, 462 (1982), affd. 751 F.2d 1168 (11th Cir. 1985), and cases cited therein. An exception to this rule exists where there is an unequivocal basis for allocating the lump-sum payment between past and future alimony obligations and such allocation comports with the substance of the transaction. *Olster*, 79 T.C. at 463.

The issue presented in this case is the tax treatment of the lump-sum payment made by petitioner husband to discharge past *and* future child and spousal support where the support arrearages were, at the time of the payment, less than the lump-sum payment.[16] Although *Olster* did not specifically address this factual situation, it certainly did design the framework for resolution of the issue presented.

In *Olster*, the taxpayer received a lump-sum payment in property valued at $36,183.24 in release of her rights to past alimony, in the amount of $44,800, and to future alimony. After deciding that the taxpayer was unable to show an unequivocal allocation of the lump-sum payment between past and future alimony obligations, we stated " Because the consideration transferred by [the husband] was given in return for [taxpayer's] release of an interwoven mixture of past, present, and future alimony obligations, the payment must be deemed to be in satisfaction of *back* alimony obligations to the extent thereof." *Olster*, 79 T.C. at 466 (emphasis added). By directing that the lump-sum payment be deemed to be in satisfaction of *back* alimony obligations, we set up a pecking order for lump-sum payments made in discharge of past and future alimony obligations. In the absence of an unequivocal allocation of

---

agreements that were, by the terms of the original agreements, to take effect upon the happening of a particular event. In both cases, the husbands originally agreed to pay a multiple of the annual alimony in a lump sum to their former wives in the event their former wives remarried. For our limited purposes, we consider the agreements to pay the lump sum to be modifications.

[16]Although petitioner husband claimed an alimony deduction in excess of $60,000 on his amended return and respondent asserted in his notice of deficiency that petitioner wife had alimony income in excess of $60,000, all of the parties have stipulated that only the $60,000 lump-sum payment is at issue here.

Respondent, essentially a stakeholder in the outcome of this case, seeks only consistent tax treatment of the $60,000 payment.

the lump-sum payment between past and future alimony obligations which comports with the substance of the transaction, lump-sum payments "must be applied *initially* to the satisfaction of alimony arrearages." *Olster*, 79 T.C. at 469 (emphasis added). Next, the remaining lump-sum payments must be applied in satisfaction of future alimony obligations.[17] In affirming *Olster*, the Eleventh Circuit fully recognized the pecking order established by this Court, "we think the proper approach is to treat [lump-sum] payments as satisfaction of unpaid alimony to the extent of such alimony unless there is an amount specifically allocated to the satisfaction of future alimony obligations and the allocation conforms to the substance of the transaction." 751 F.2d at 1172.

Accordingly, that portion of the lump-sum payment attributable to past support obligations—whether so attributable because an unequivocal basis for allocation exists which comports with the substance of the transaction or, in absence of such an allocation, so attributable because the lump-sum payment is deemed to first satisfy past support obligations—will retain the tax character of the original payments. That portion attributable to future support obligations—whether so attributable because an unequivocal basis for allocation exists which comports with the substance of the transaction or, in absence of such an allocation, so attributable because the lump-sum payment in excess of the support arrearages is deemed to satisfy future support obligations—will receive a tax character that is independent of the tax character of the original payments. *Loverin v. Commissioner, supra;*[18] *Sechrest v. United States, supra; Commissioner v. Senter, supra.*[19] Accordingly, if the lump-sum payment attributable to future alimony obligations is a specified amount, payable in less than 10 years, then such payment will not be a periodic payment,

---

[17]*Olster v. Commissioner*, 79 T.C. 456 (1982), affd. 751 F.2d 1168 (11th Cir. 1985), does not reach this issue because the lump-sum payment there was less than the alimony arrearages. However, the opinion as a whole indicates that this is the next step. See also *Lehrer v. Commissioner*, T.C. Memo. 1980-256, which recognizes that the portion of a lump-sum payment made in discharge of past and future support that is not attributable to past support is attributable to future support.

[18]See also *Wickworth v. Commissioner, supra*.

[19]These cases, none of which involved a situation where the husband was delinquent, are here applicable because, after initially applying the lump-sum payment to the support arrearages, petitioner husband is no longer delinquent.

unless such payment is contingent on the death of either spouse, the remarriage of the wife, or a change in economic circumstances of either spouse and is in the nature of alimony or an allowance of support. Sec. 71(c); sec. 1.71-1(d)(3), Income Tax Regs. If the lump-sum payment is not a periodic payment, it will not be deductible by the husband and will not be income to the wife.

We must now apply this standard to the facts before us. It is clear from the record that, as of March of 1977, petitioner wife and petitioner husband were in agreement as to the amount of past due child and spousal support. The support summary, prepared by petitioner wife's divorce counsel, indicates that the past due 'child and spousal support as of March of 1977 was $11,788. The support recap, prepared by petitioner husband's divorce counsel, indicates that the past due child and spousal support as of March 30, 1977, was $11,788. Accordingly, we hold that, as of March 30, 1977, petitioner husband owed petitioner wife, in past due child and spousal support, $11,788.[20]

From March 30, 1977, until August 12, 1977, the date petitioner wife and petitioner husband entered into the stipulation and waiver agreement, petitioner husband was required to pay petitioner wife additional child support of $1,000[21] and additional spousal support of $5,100.[22] Accord-

---

[20]Although the parties submitted other documents indicating the amount of support arrearages, we consider the support summary and the support recap most indicative of the amount of support arrearages as they indicate complete agreement between petitioner wife and petitioner husband as to such amount.

[21]This figure is derived as follows:

| Child support due | Amount |
|---|---|
| Apr. 1, 1977 | $200 |
| May 1, 1977 | 200 |
| June 1, 1977 | 200 |
| July 1, 1977 | 200 |
| Aug. 1, 1977 | 200 |
| | 1,000 |

[22]This figure is derived as follows:

| Spousal support due | Amount |
|---|---|
| Apr. 1, 1977 | $1,300 |
| May 1, 1977 | 950 |
| June 1, 1977 | 950 |
| July 1, 1977 | 950 |
| Aug. 1, 1977 | 950 |
| | 5,100 |

ingly, the total amount of support arrearages as of August 12, 1977, was $17,888.

The stipulation and waiver agreement, which, as we have already stated, was entered into by petitioner wife and petitioner husband with the intention of satisfying all past and future child and spousal support obligations, does not specifically allocate the lump-sum payment between past and future support obligations. Neither petitioner wife nor petitioner husband has shown an unequivocal basis for allocating the lump-sum payment between past and future support obligations. Under *Olster*, the lump-sum payment is applied initially to the support arrearages. Accordingly, we hold that $17,888 of the $60,000 lump-sum payment is attributable to support arrearages.

The stipulation and waiver agreement fails to "fix" what part of the $17,888 in support arrearages is attributable to child support arrearages. Where an agreement fails to "fix" the portion of a child and spousal support payment that is attributable to child support, the entire payment will be deemed to be for spousal support. *Commissioner v. Lester*, 366 U.S. 299 (1961). Accordingly, we hold that the portion of the lump-sum payment attributable to support arrearages, $17,888, is attributable solely to spousal support arrearages. This portion of the lump-sum payment will retain the tax character of spousal support payments timely made.

The spousal support payments of $1,300 per month payable pursuant to the memorandum of decision and the interlocutory judgment until the death or remarriage of petitioner wife were periodic payments within the meaning of section 71(a). As periodic payments they would be included in petitioner wife's gross income and deductible by petitioner husband. Secs. 71(a) and 215. The $17,888 portion of the lump-sum payment allocated to spousal support arrearages retains the tax character of the spousal support payments. Accordingly, $17,888 is included in petitioner wife's gross income and is deductible by petitioner husband.

The remaining portion of the lump-sum payment, $42,112, is allocable to future child and spousal support. As with past child and spousal support, the stipulation and waiver agreement fails to "fix" which portion of the future child

and spousal support is allocable to child support. In accordance with *Commissioner v. Lester, supra,* the entire $42,112 of the lump-sum payment attributable to future support will be deemed to be for future spousal support. This portion is not a periodic payment because it is a specified amount payable in less than 10 years and is not contingent.[23] Sec. 71(c); sec. 1.71-1(d)(3), Income Tax Regs. Accordingly, we hold that the portion of the lump-sum payment attributable to future spousal support, $42,112, is not includable in petitioner wife's gross income and is not deductible by petitioner husband.[24]

*Decisions will be entered under Rule 155.*

---

[23]Sec. 71(c)(1) requires that the "principal sum" be *"specified"* in the agreement in order to exclude payments made in satisfaction of the principal sum from the definition of periodic payments. This Court has recognized that there is no material difference between an agreement where the "principal sum" is specifically stated and an agreement where it is necessary to multiply the payments by a fixed number of months to arrive at the "principal sum." *Kent v. Commissioner,* 61 T.C. 133, 136 (1973), and cases cited therein. The "principal sum" is here determined by subtraction rather than by multiplication; the "principal sum" equals the lump-sum payment *minus* support arrearages. We see no material difference between this agreement and one in which the "principal sum" is specifically stated. We hold that the principal sum of $42,112 has been "specified" within the meaning of sec. 71(c)(1).

[24]A collateral issue raised by petitioner husband relates to whether a payment of $26,509.71 made on his behalf was properly credited by the Internal Revenue Service. We perceive this collateral issue, on which the respondent has not commented, to be an administrative matter which is more properly resolved in the Rule 155 computation.