MARLENE A. SCOTT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LINZY SCOTT, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket Nos. 5534-87; 7672-87.
United States Tax Court
T.C. Memo 1988-215; 1988 Tax Ct. Memo LEXIS 243; 55 T.C.M. (CCH) 856; T.C.M. (RIA) 88215; May 16, 1988. Edward W. Bowen, Jr., for petitioner Marlene A. Scott. Cheryl Shaw and Robert J. Hipple, for petitioner Linzy Scott, Jr. Mark Mesler and Bonnie L. Cameron, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: By separate notices of deficiency, the Commissioner determined deficiencies in petitioners' Federal income tax and additions to tax against petitioner Linzy Scott, Jr. as follows: Additions to Tax
Year
Docket No.
Deficiency
§ 6653(a)(1) [1]
§ 6653(a)(2)
§ 6661
1981
5534-87
$  5,383
--
--
--
7672-87
26,835
$ 1,341.75
*
--
1982
5534-87
2,116
--
--
--
1983
5534-87
2,319
--
--
--
7672-87
5,389 269.45
*
$ 538.90
*245 These cases were consolidated for purposes of trial, briefing and opinion. The deficiencies determined against Marlene A. Scott ("Mrs. Scott") are attributable to respondent's determination that certain payments received from Linzy Scott, Jr. ("Dr. Scott") in 1981, 1982 and 1983 were periodic alimony payments and thus includible in gross income pursuant to section 71(a) and to his disallowance of Mrs. Scott's claimed dependency exemption for petitioners' daughter. After settling other issues, Dr. Scott remains a party to this litigation solely because positions taken on his returns relating to payments made in connection with petitioners' divorce are inconsistent with those taken by Mrs. Scott. Respondent is a stakeholder, although on brief he supported Dr. Scott's position. The issues we must decide are (1) whether any part of Dr. Scott's payments to Mrs. Scott in 1981, 1982, and 1983 were alimony within the meaning of section 71 and thus includible in Mrs. Scott's *246 gross income pursuant to section 215; and (2) which petitioner is entitled to claim their daughter as a dependent pursuant to section 152 for the taxable years 1982 and 1983. FINDINGS OF FACT Most of the facts have been stipulated and, except as indicated in note 3, are so found. Petitioners, Linzy Scott, Jr. and Marlene A. Scott, resided in Atlanta, Georgia when they filed their petitions in these cases. Petitioners were divorced on October 7, 1977, after 15 years of marriage and two children, Gina and Linzy, III. The Final Judgment and Decree of Divorce (the "Divorce Decree") was filed on October 7, 1977, in the Superior Court of Fulton County, Georgia (the "Georgia Court"). The Divorce Decree in relevant part ordered Dr. Scott to pay $ 700 per month per child as child support and $ 1,200 per month as alimony. Dr. Scott also was ordered to pay the children's educational expenses at a private secondary school and through college and their medical and dental expenses. Dr. Scott fell behind on his alimony and child support payments and as a result petitioners returned to court in 1979. Following a jury trial, the Georgia Court modified the Divorce Decree on August 16, 1979. *247 The court ordered Dr. Scott to continue to pay $ 1,400 per month child support and increased his alimony obligation to $ 1,400 per month. All other obligations under the Divorce Decree were terminated except for any arrearages. On December 3, 1979, the Divorce Decree was again modified. The new agreement (hereinafter the "1979 Amendment") provided in relevant part as follows: 2. Linzy Scott, Jr. shall pay to Marlene Ann Scott the total lump sum of Thirty Thousand Dollars ($ 30,000.00) as permanent alimony for her support, care and maintenance. Said amount shall be paid in thee [sic] monthly installments of $ 10,000 each, no later than the 6th, 12th, and 18th month from the date of this Agreement. When said payment of Thirty Thousand Dollars ($ 30,000.00) is paid in full to Marlene Ann Scott and the terms of paragraph 4 have been satisfied, said payment shall be a complete accord and satisfaction of all past, present and future alimony payments as provided in the Final Judgments and Decrees, as modified. 3. Linzy Scott, Jr. acknowledges that the Court has held him to be in arrearage on alimony and child support payments under the Decree as modified and the parties desire *248 to reach a settlement regarding such arrearage. Linzy Scott, Jr. shall pay to Marlene Ann Scott the sum of Twenty Thousand Dollars ($ 20,000.00) as a total settlement and a full and complete accord and satisfaction of all alimony and child support payments that are or may be due as of the date of this Agreement. Said sum shall be paid in two equal installments no later than the 24th and 30th month from the date of this Agreement. 4. Linzy Scott, Jr. shall continue to comply with the Decree as modified providing for the payment of Seven Hundred Dollars ($ 700.00) per month per child for the support, care and maintenance of the aforenamed minor children for the parties and further providing for the payment of Fourteen Hundred Dollars ($ 1,400.00) per month as alimony until the provisions in paragraph 2 and 3 above are fully complied with and paid. 5. When Linzy Scott, Jr. has paid the total sum of Fifth Thousand Dollars ($ 50,000.00) to Marlene Ann Scott as provided above in paragraphs 2 and 3 of this Agreement, his obligations under the Decree as modified and in Civil Action C-37172 shall cease and paragraph 4 above shall become null and void. However, in the event Linzy *249 Scott, Jr. shall default under any term of this Agreement prior to the amounts provided for in paragraph 2 and 3 being paid in full, this Agreement shall become void and the terms and conditions of the judgments and final decrees as modified in each of the above-styled actions shall become effective as if this Agreement had never been executed. 6. Linzy Scott, Jr. shall make the following periodic payments to Marlene Ann Scott after paragraphs 2 and 3 above are fully complied with: (a) The sum of One Thousand Dollars ($ 1,000.00) per month as child support for the support, maintenance, care and education of the above-named minor children. Such payments of One Thousand dollars ($ 1,000.00) per month shall commence on the fifteenth (15th) day of the next month after the provisions in paragraphs 2 and 3 above are fully complied with and shall continue until Gina Ann Scott reaches the age of 18 years, marries, enters the Armed Services, ceases to live with Marlene Ann Scott, becomes self-supporting, or dies, whichever event shall first occur; (b) On the eighteenth (18th) birthday of Gina Ann Scott, Linzy Scott, Jr.'s payments of One Thousand ($ 1,000.00) per month as child support *250 shall be reduced to the sum of Seven Hundred Dollars ($ 700.00) per month for the support, maintenance, care and education of the said children, such payments of Seven Hundred Dollars ($ 700.00) per month shall continue until Linzy Scott, III reaches the age of eighteen (18) years, marries, enters the Armed Services, ceases to live with Marlene Ann Scott, becomes self-supporting, or dies, which ever event shall first occur. (c) All of the foregoing payments shall be made on the fifteenth (15th) day of each month, as specified in paragraph 6(a) and (b) and continuing thereafter as provided in this paragraph. 7. Linzy Scott, Jr. shall claim each of the children as exemptions on his Federal and State Income Tax Returns, provided that he is not in default in his child support payments as required by this Agreement. 8. Linzy Scott, Jr. shall pay the full amount of the tuition and related expenses of Linzy Scott, III for Lovett School or such other private secondary school, comparable in cost and quality as he may attend. 9. Both parties agree that the children of the marriage should be accorded the opportunity to pursue and/or obtain college educations and further graduate *251 and professional work or training if desired, and each party agrees and pledges to assist financially within his or her means to see that the children are accorded this opportunity, and in no event shall Linzy Scott, Jr. contribute less than $ 4,000 per year toward such education for each child.
Dr. Scott made a lump sum payment of $ 10,000 in 1981 in partial satisfaction of his obligations under paragraphs 2 and 3. Dr. Scott again failed to comply with the court order. On October 5, 1981, petitioners entered into an informal agreement which, although intended to be, was never reduced to a court order. The informal agreement provided for a payment of $ 32,500 by Dr. Scott in full satisfaction of all past, present and future alimony and child support obligations. The portion of the settlement attributable to alimony was $ 22,500 and was payable in 36 monthly installments of $ 625. Dr. Scott also agreed to continue to be responsible for the children's educational expenses and Mrs. Scott agreed that he could continue to claim the children as dependents so long as he did not default on any payments due under the informal agreement. In the event he defaulted, Dr. Scott expressly *252 waived any right he might have to claim the children as dependents. Dr. Scott defaulted on his obligations under the informal agreement as well as the 1979 Amendment and Mrs. Scott sought a contempt order against him in 1984. On April 19, 1985, the Georgia Court issued a Consent Order and Judgment [2] pursuant to which Dr. Scott agreed to pay $ 10,000 in delinquent child support and $ 10,000 in delinquent alimony. He also agreed to pay present, future and past due college tuition for petitioners' daughter Gina as well as one year's graduate school tuition but not in excess of $ 12,000 per year. He agreed to be responsible for the same expenses for his son as well as his private high school expenses but again not in excess of $ 12,000 per year. Petitioners agreed that the Consent Order constituted "the full satisfaction and accord of any allegations of arrearage as to alimony, child support, and any alleged contempt as to any such non-payment, and also all future alimony * * *". *253 During the years in issue, Dr. Scott made the following payments to Mrs. Scott as alimony and child support: Year
Amounts [3]
1981
$ 26,398.63
1982
16,041.30
1983
16,785.00
On her 1981 Federal income tax return, Mrs. Scott reported alimony income of $ 5,300. On her 1982 and 1983 returns, Mrs. Scott reported no alimony income. Dr. Scott claimed alimony deductions on his returns for the same years as follows: Year
Amount
1981
$ 22,640
1982
7,849
1983
8,950
Petitioners' daughter Gina was a student at *254 Georgetown University in 1982 and 1983. She was no longer a minor at that time, and Dr. Scott did not make child support payments to Mrs. Scott on her behalf. Dr. Scott, however, paid $ 8,398 in 1982 and $ 12,498.59 in 1983 to Georgetown University for Gina's tuition, room and board. Mrs. Scott sent Gina money for living expenses while she was at school. Gina lived with Mrs. Scott when she was not at school, and Mrs. Scott paid her expenses during those periods. Mrs. Scott, however, could not specify how much she contributed toward Gina's support in 1982 and 1983. OPINION We first consider whether any of the payments that Dr. Scott made to Mrs. Scott in 1981, 1982 and 1983 pursuant to the Divorce Decree as then in effect constituted alimony payments within the meaning of section 71. Section 71(a), as in effect during the years in issue, provides in relevant parts: SEC 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE. -- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE. -- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made *255 at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * * (3) DECREE FOR SUPPORT. -- If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. Section 71 contemplates two types of support payments: periodic payments and installment payments. Periodic payments made pursuant to a divorce or separate maintenance agreement are deductible by the payor spouse and includible in the recipient's gross income. Section 1.71-1(b), Income Tax Regs. Installment payments discharging a lump sum obligation specified in a divorce or separate maintenance *256 agreement are not considered periodic payments and thus are not includible in gross income pursuant to section 71(a). Section 1.71-1(d)(1), Income Tax Regs. The regulations, however, provide two exceptions to the latter rule. First, where the payment of a lump sum specified in a divorce decree is to be made over a period in excess of 10 years, the payments are considered periodic payments. Section 1.71-1(d)(2), Income Tax Regs. Second, even if such payments are to be made within 10 years or less, they will be treated as periodic payments if they are "subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and * * * in the nature of alimony or an allowance for support." Section 1.71-1(d)(3)(i), Income Tax Regs.
Petitioners agree that the modification of the Divorce Decree applicable to the years in issue is the Agreement of December 3, 1979 (the "1979 Agreement"). That Agreement provided for a lump sum payment of $ 30,000 as permanent alimony to Mrs. Scott. Dr. Scott was also required to pay $ 20,000 to Mrs. Scott in satisfaction of all past due child support and alimony payments. Until *257 such time as he paid the lump sum amounts in full, Dr. Scott was obligated to continue making alimony payments of $ 1,400 per month. In addition, Dr. Scott was required to pay $ 1,400 per month in child support until the lump sum amounts were paid in full. His support obligation would then be reduced to $ 1,000 per month while both children were minors, and $ 700 per month after Gina turned 18 and until Linzy, III did so. Although the Agreement does not so state, presumably Dr. Scott's monthly child support obligation would cease when both children attained the age of majority whether or not the lump sum payments had yet been made. The $ 30,000 obligation was to be paid within 18 months and the $ 20,000 obligation within 30 months. Dr. Scott made one $ 10,000 payment in 19981. He paid an additional $ 20,000 in 1985 pursuant to the Consent Order and Judgment which modified Dr. Scott's obligation under the 1979 Agreement and all prior agreements. Petitioners and respondent agree that the $ 30,000 and $ 20,000 payments required by paragraphs 2 and 3 of the 1979 Agreement are not periodic alimony payments and, therefore, are not deductible by Dr. Scott nor includible in Mrs. *258 Scott's gross income. [4] Mrs. Scott argues, however, that all of the payments made pursuant to paragraph 4 were installments on the lump sum settlement and were not periodic payments because they were to be made over a period of less than 10 years, were not subject to contingencies, and were not entirely attributable to alimony. See section 1.71-1(d)(2), (3), Income Tax Regs. We conclude that Mrs. Scott has misinterpreted the 1979 Agreement and relevant statutes and that the portions of Dr. Scott's payments to Mrs. Scott in 1981, 1982 and 1983 attributable to alimony are periodic payments and includible in her gross income. *259 Mrs. Scott asks us to treat paragraphs 2, 3 and 4 as a single settlement obligation and to characterize the payments under paragraph 4 as installments on the lump sum obligation. We cannot do so. The 1979 Agreement distinguishes between the lump sum payments and the monthly payments as separate obligations. Paragraphs 2 and 3 provide for payments of $ 30,000 and $ 20,000, respectively, to Mrs. Scott in satisfaction of Dr. Scott's past, present and future alimony obligations and all past due child support. Paragraph 4 provides that Dr. Scott must continue to make monthly alimony and child support payments as specified in the 1977 Divorce Decree until he fully complies with paragraphs 2 and 3. Dr. Scott failed to comply fully with either the lump sum payment requirement or the monthly payments requirement and petitioners thus returned to court. Notwithstanding that paragraph 5 of the 1979 Agreement provides that upon default the 1979 Agreement is void, the Georgia Court issues a Consent Order and Judgment in 1985 modifying the 1979 Agreement and ordering Dr. Scott to pay $ 20,000 back child support and alimony. After he made that payment, the Consent Order and Judgment provided *260 that all of his obligations under prior court orders would cease. Dr. Scott made the $ 20,000 payment in 1985. Dr. Scott's monthly payments for child support and alimony in 1981, 1982 and 1983 totalled $ 59,224.93. [5] If, as Mrs. Scott contends, these payments were intended to be treated as installments on Dr. Scott's obligations under paragraphs 2 and 3 of the 1979 Agreement, then those obligations would have been fully satisfied by the end of 1983 and Dr. Scott would no longer have to pay alimony. [6] Yet, the 1985 Consent Judgment provides for the payment of $ 20,000, $ 10,000 of which is stated to be for delinquent alimony payments. This provision makes sense only if the periodic alimony payments provided for in paragraph 4 of the 1979 Agreement are separate from the lump sum payments required pursuant to paragraphs 2 and 3. Dr. Scott never fully complied with paragraphs 2 and 3 and his obligation to make periodic payments under paragraph 4 apparently continued until modified in 1985. Dr. Scott also failed to comply with paragraph 4 and part of the $ 20,000 payment in 1985 was in satisfaction of amounts due under that paragraph. *261 Having determined that the alimony and child support payments that Mrs. Scott received in 1981, 1982 and 1983 were periodic payments made pursuant to paragraph 4 of the 1979 Agreement, we must determine what portion of those payments represents alimony. Only the portion attributable to alimony is includible in the recipient spouse's gross income. See section 71(a). Payments labelled by a divorce or separation instrument as child support are not includible in gross income. Section 71(b). [7] If any payment is less than the amount specified in the instrument, then the amount paid is allocated first to child support until the amount required to be paid has been satisfied. Section 71(b). The payee spouse may deduct alimony or separate maintenance payments but may not deduct child support payments. See section 215. *262 Dr. Scott did not pay the full $ 2,800 per month in child support and alimony required by the 1979 Agreement during the years in issue. In 1981 Dr. Scott paid $ 26,398.63 in alimony and child support. Of that, $ 16,800 is deemed to be child support ($ 1,400 per month x 12 months). Section 71(b). The remaining amount, $ 9,598.63, is alimony. In 1982, Dr. Scott paid $ 16,041.30, $ 8,400 of which is deemed to be child support. [8] The remaining amount, $ 7,641.30 is alimony. Finally, in 1983 Dr. Scott paid $ 16,785.00, of which $ 8,400 is deemed to be child support. Mrs. Scott thus received $ 8,385.00 as alimony in 1983. Mrs. Scott reported $ 5,300 in alimony income on her 1981 Federal income tax return. She reported no alimony income on her 1982 and 1983 returns. She, therefore, understated her gross income by $ 4,298.63 in 1981, $ 7,641.30 in 1982 and $ 8,385.00 in 1983. Similarly, Dr. Scott is entitled to deduct only those amounts paid during the years in issue that are allocable to alimony. To the extent these amounts differ from the amounts we *263 have found to be attributable to alimony payments in each year, adjustments must be made in the Rule 155 computation. [9]
Next we must decide which petitioner is entitled to claim their daughter Gina as a dependent for the taxable years 1982 and 1983. Section 152(e)(1) sets forth the general rule that in the case of divorced parents, the custodial parent is entitled to the dependency exemption. Section 152(e)(2), as in effect for the years in issue, provided two exceptions to the general rule: (2) SPECIAL RULE. -- The child of parents described in paragraph (1) shall be treated as having received over half of his support during the calendar year from the parent not having custody if -- (A)(i) the decree of divorce or of separate maintenance, or a written agreement between the parents applicable to the taxable year beginning in such calendar year, provides that the parent not having custody shall be entitled to any *264 deduction allowable under section 151 from such child, and (ii) such parent not having custody provides at least $ 600 for the support of such child during the calendar year, or (B)(i) the parent not having custody provides $ 1,200 or more for the support of such child (or if there is more than one such child, $ 1,200 or more for each of such children) for the calendar year, and (ii) the parent having custody of such child does not clearly establish that he provided more for the support of such child during the calendar year than the parent not having custody.
Mrs. Scott argues that Dr. Scott does not fall within either exception and is thus not entitled to claim Gina as a dependent. She argues that Dr. Scott fails to satisfy the first exception based on the plain language of the 1979 Agreement. Paragraph 7 of the Agreement provides, "Linzy Scott, Jr. shall claim each of the children as exemptions on his Federal and State Income Tax Returns, provided that he is not in default in his child support payments as required by this Agreement." Because Dr. Scott did not fully comply with his child support obligations, Mrs. Scott contends that he is not entitled to the dependency *265 exemption. The language of the Agreement, however, provides only that Dr. Scott is entitled to claim the exemption if he is not in default. It does not provide the converse, i.e., that Dr. Scott shall not be entitled to an exemption if he is in default. Rather, if Dr. Scott is in default, the Agreement provides no guidance. We must turn to the second exception under section 152(e)(2). Pursuant to section 152(e)(2)(B), the noncustodial parent may claim a child as a dependent if he or she contributes at least $ 1,200 per year to the child's support and the custodial parent does not clearly establish that he or she provided more support than the noncustodial parent. Dr. Scott did not pay child support for his daughter in 1982 and 1983 because she was no longer a minor, but he paid her tuition, room and board at Georgetown University for both years. In 1982, Dr. Scott paid $ 8,398.00 to Georgetown University and in 1983 he paid $ 12,498.59. Mrs. Scott testified that she sent her daughter money while she was at school and paid her living expenses when she was at home during school vacations. She produced no checks or other evidence of the amounts of money she contributed to Gina's *266 support in either year. Section 152(e)(2)(B) requires the custodial parent to "clearly establish" that he or she contributed more for child support than the noncustodial parent once the noncustodial parent has shown that he or she contributed at least $ 1,200 toward child support. McGuire v. Commissioner,77 T.C. 765, 776 (1981). The phrase "clearly establish" imposes a burden on the custodial parent to demonstrate support contributions by a clear preponderance of the evidence. McGuire v. Commissioner,77 T.C. at 770. See also Labay v. Commissioner,55 T.C. 6 (1970), affd. per curiam 450 F.2d 280 (5th Cir. 1971). Other than vague assertions, Mrs. Scott presented no evidence to substantiate her assertions. We, therefore, hold that she has not met her burden of proof and that Dr. Scott was entitled to claim petitioners' daughter as a dependent on his 1982 and 1983 income tax returns. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect during the years in issue. ↩
*. 50 percent of the interest due on that portion of any underpayment attributable to negligence. ↩
2. In considering the case, the Georgia Court apparently disregarded the informal agreement entered into in 1981. Georgia Code section 19-6-19↩ (1985) requires that any modification of a support agreement be made in the form of a formal petition to the court. 3. Dr. Scott and respondent stipulated that Dr. Scott paid $ 26,398.63 in 1981, $ 16,791.30 in 1982, and $ 17,335.00 in 1983 as alimony and child support. We attribute the difference between the stipulated amounts and the amounts we have found to be correct for 1982 and 1983 to addition errors. On brief Dr. Scott argues, citing the stipulation of facts, that he paid $ 24,140.00 as alimony and child support in 1981 and $ 16,775.00 in 1983. We do not know how Dr. Scott arrived at the amounts set forth in his brief but because he cites the stipulation of facts as support for those figures, we assume they are typographical errors.↩
4. In Bernard v. Commissioner,87 T.C. 1029 (1986), we considered the tax treatment of a lump sum payment intended to satisfy all past due and future alimony obligations. See also Olster v. Commissioner,79 T.C. 456, 462 (1982), affd. 751 F.2s 1168 (11th Cir. 1985). We held that the portion of the lump-sum payment attributable to past support obligations -- whether so attributable because an unequivocal basis for allocation exists which comports with the substance of the transaction or, in absence of such an allocation, so attributable because the lump-sum payment is deemed to first satisfy past support obligations -- will retain the tax character of the original payments. That portion attributable to future support obligations -- whether so attributable because an unequivocal basis for allocation exists which comports with the substance of the transaction or, in absence of such an allocation, so attributable because the lump-sum payment in excess of the support arrearages is deemed to satisfy future support obligations -- will receive a tax character that is independent to the tax character of the original payments.
87 T.C. at 1036.
The alimony payments on which the husband in Bernard was in arrears were periodic payments. We, therefore, concluded that the portion of the lump sum payment attributable to past due alimony retained its character as a periodic payment and was includible in the wife's gross income pursuant to section 71(a). In the instant case, Dr. Scott made a lump sum payment of $ 10,000 in 1982 and partial satisfaction of his obligations under paragraph 2 and/or 3 of the 1979 Agreement. Under the Bernard rationale, the portion of the $ 10,000 payment deemed to satisfy any past due alimony obligation would retain the character of the alimony obligation as a periodic payment and would thus be includible in Mrs. Scott's income and deductible by Dr. Scott. Sections 71(a), 215. There is, however, no evidence in the record showing the amount of any alimony payments in which Dr. Scott was in arrears. Moreover, neither Dr. Scott nor respondent argues that any part of the $ 10,000 payment was a periodic payment. Consequently, no part of the lump sum payment is includible in income pursuant to section 71(a) or deductible pursuant to section 215. ↩
5. Dr. Scott paid $ 26,398.63 in alimony and child support in 1981, $ 16,041.30 in 1982 and $ 16,785.00 in 1983. ↩
6. The record does not indicate when petitioners' son turned 18, thus ending Dr. Scott's child support obligation. ↩
7. During the years in issue, section 71(b) provided: (b) PAYMENTS TO SUPPORT MINOR CHILDREN. -- Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support.↩ [Emphasis added.] 8. Petitioners' daughter turned 18 on January 4, 1982, and Dr. Scott was no longer obligated to contribute to her support. ↩
9. In his notice of deficiency, respondent determined that Mrs. Scott understated her income by the amount claimed as deductions on Dr. Scott's returns. Because we find those amounts to be incorrect, Rule 155 computations will be necessary in both dockets. ↩