T.C. Memo. 2019-11

UNITED STATES TAX COURT

JEFFREY SIEGEL AND SANDRA SIEGEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27572-16.                    Filed February 14, 2019.

<u>Peter J. Tomao</u> and <u>Lawrence J. Scherer</u>, for petitioners.

<u>Jerry M. Innocent</u> and <u>Gennady Zilberman</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioners had a $44,281 deficiency in Federal income tax for 2012.  This determination resulted from respondent's disallowance of $115,618 of petitioners' $242,137 deduction of payments of alimony arrearages for 2012.

**[\*2]** We granted respondent's motions to remove the small tax case designation and for leave to file an amended answer asserting an increased deficiency against petitioners based on the denial of $225,000 instead of $115,618 of petitioners' alimony deduction. Thus, the issue for decision is whether petitioners are entitled to deduct as alimony arrearages $242,137 (as petitioners claimed and contend) or $17,137 (as respondent contends). We hold that petitioners are entitled to deduct alimony of $242,137 for 2012.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]

A.     <u>Mr. Siegel's Prior Marriage</u>

Jeffrey Siegel (petitioner) and Belinda Johnson (his ex-spouse) were married on September 16, 1989, and have two daughters.

Petitioner and his ex-spouse were divorced pursuant to a judgment of divorce entered in the Supreme Court of New York, County of Nassau, on May

---

[1]Under the Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, sec. 11051, 131 Stat. at 2089-2090, alimony paid is no longer deductible if paid pursuant to a divorce instrument executed after December 31, 2018. That statutory change does not apply to the tax year before the Court in this case.

[2]Petitioners resided in Florida when the petition was filed. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]** 23, 2003. Under the judgment of divorce, petitioner was required to make monthly spousal maintenance payments to his ex-spouse of $10,110 per month and child support payments of $5,000 per month.

B.     Petitioner's Maintenance Obligations From 2003 to 2007

After the divorce petitioner's business went into bankruptcy, his income fell drastically, and he fell behind in making the payments required by the judgment of divorce. In May 2004 his ex-spouse obtained an order from a judge of the Supreme Court of New York, County of Nassau, for entry of a money judgment[3] of $228,483 against petitioner. On December 19, 2006, the Family Court of New York, County of New York, found petitioner to be in arrears of $253,622. On September 14, 2007, the Family Court issued a money judgment of $216,625 against petitioner.

C.     Petitioner's Maintenance Obligations From 2008 to 2012

On August 15, 2008, petitioner's ex-spouse filed a motion in the Supreme Court of New York, County of Nassau, to hold petitioner in contempt and to enforce the financial provisions of the judgment of divorce. Petitioner filed a motion on September 17, 2008, seeking (1) to reduce his child support and obtain

---

[3]"Money judgment" has been defined as "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." Black's Law Dictionary 920 (9th ed. 2009).

[*4] other relief and (2) to consolidate those requests with his ex-spouse's contempt petition. Those cases were consolidated and a hearing was held before a special referee of the Supreme Court of New York, County of Nassau, who issued a report dated November 23, 2010.

From the entry of the 2007 money judgment until the issuance of the November 23, 2010, report, petitioner made 92 child support and alimony payments to his ex-spouse totaling $255,410.

The special referee recommended that the Supreme Court of New York, County of Nassau, grant petitioner's motion to reduce the amount of petitioner's child support payments and also concluded that petitioner had willfully failed to comply with a lawful order of support. Taking into account the reduction of petitioner's support obligations, the special referee calculated that from July 2006 to August 2010 petitioner owed his ex-spouse $567,991 in child support, alimony, and attorney's fees. Taking into account payments made by petitioner from July 2006 through August 2010, the total remaining arrearages were $242,137. The referee also recommended that the Supreme Court of New York, County of Nassau, award attorney's fees of $156,000 to petitioner's ex-spouse. Finally, the special referee found that petitioner owed $25,000 to a financial account held by one of his daughters.

**[*5]** D.	2012 Order

By order dated February 12, 2012 (2012 order), the Supreme Court of New York found petitioner to be in contempt and sentenced him to 150 days in jail unless he paid $25,000 to his daughter's account and $225,000 to his former spouse. The order also confirmed all of the findings of the special referee. In this order, the court stated that it is

> ORDERED and ADJUDGED, that Defendant, Jeffrey Siegel, is found to be in contempt for his wilful violations of the terms of orders of the court * * *. Having the opportunity to be fully heard on the issue at hearing, the Defendant, Jeffrey Siegel, is sentenced to incarceration in the Nassau County Correctional Facility for a period of one hundred and fifty (150) days. The court hereby stays this provision for Defendant's incarceration and permits the contemnor to purge his contempt by the payment of $25,000 to the 529 Account of * * * [daughter] and naming the Wife the Trustee of this Account and the payment of $225,000 to Plaintiff. Both of these purge provisions shall be made on or before May 30, 2012. Payment to the Plaintiff of the sum of $225,000 shall be by bank or certified check, delivered to Plaintiff's attorney. The failure to make the payments directly to the Plaintiff and to the * * * [daughter's account] and to name the wife as Trustee as directed herein on or before May 30, 2012 shall result in the issuance of a warrant of arrest for the contemnor, Jeffrey Siegel.

Petitioner submitted a check for $250,000 to the attorneys for his ex-spouse on June 6, 2012. The Office of Child Support Enforcement applied $225,000 of this payment to arrearages petitioner owed to his ex-spouse.

**[\*6]** E.        Petitioners' Tax Return for 2012

On their jointly filed Form 1040, U.S. Individual Income Tax Return, for tax year 2012, petitioners deducted $242,137 for alimony paid.

OPINION

The sole issue for decision is whether petitioners may deduct alimony paid of $242,137 (as petitioners contend) or only $17,137 (as respondent contends), i.e., whether $225,000 that petitioner paid in response to the 2012 order is deductible.

A.        Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, if the Commissioner raises a new issue or seeks an increase in the deficiency, the Commissioner has the burden of proof as to the new issue or the increased deficiency.  Rule 142(a)(1).  Petitioners contend that the burden of proof on all amounts in dispute shifts to respondent under section 7491(a).  We need not consider the burden of proof further because no fact is in dispute relating to petitioners' claim.

[*7] B.        Section 71(b)

"Alimony or separate maintenance payment" is defined in section 71(b) as any payment in cash if (1) such payment is received by a spouse under the divorce decree, (2) the divorce or separation agreement does not designate such payment as a payment which is not includible in gross income under section 71 and not allowed as a deduction under section 215, (3) the spouses are not living in the same household at the time of the payment, and (4) there is no liability to make the payments for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.  The parties agree that the payments made pursuant to the 2012 order meet the first three criteria, but they dispute whether petitioner would have remained liable for making the payments after his ex-spouse's death.

C.    The Parties' Primary Contentions

Petitioners contend that they may deduct $225,000 because the amount was payment of alimony arrearages pursuant to petitioner's maintenance obligations and lump-sum payments of alimony arrearages retain their character as alimony paid.

[*8] Respondent contends that the 2012 order should be treated as a money judgment because the New York court which issued it was authorized only to issue a money judgment to enforce the payment of alimony arrearages. Petitioners respond to that contention by citing authority under New York law for the issuance of a contempt order to achieve the payment of alimony arrearages.

D. Discussion

    1.    Whether Alimony Arrearages Petitioner Paid Retain Their Character as Alimony Paid

Petitioner paid $250,000 of arrearages relating to the termination of his prior marriage to avoid imposition of a 150-day jail term under the 2012 order. Of that amount, $225,000 was arrearages in alimony payments. Lump-sum payments of alimony or child support arrearages generally retain their character as alimony or child support for Federal tax purposes. Barrett v. United States, 74 F.3d 661 (5th Cir. 1996); Bernard v. Commissioner, 87 T.C. 1029, 1036 (1986); Davis v. Commissioner, 41 T.C. 815, 820 (1964); Berry v. Commissioner, T.C. Memo. 2005-91; see also Rev. Rul. 55-457, 1955-2 C.B. 527.

    2.    Whether the 2012 Order Is a Money Judgment

The 2012 order found petitioner in contempt and provided a choice to petitioner: go to jail for 150 days or pay $250,000 in arrearages relating to his

[*9] divorce. It did not require any payment if petitioner decided to accept the jail term.

The 2012 order can be contrasted with the 2007 money judgment. The 2007 money judgment states that "judgment be entered in favor of * * * [petitioner's ex-spouse] against * * * [petitioner] in the amount of $216,625". The 2007 money judgment also states that "a certified copy of said judgment may be filed in the county clerk's office in accordance with [s]ection 460 of the Family Court Act". Under New York law, a "certified copy of the order directing the entry of a money judgment shall be entered in the office of the clerk of the county in which the proceeding was commenced." N.Y. Fam. Ct. Act (FCA) sec. 460(2) (McKinney 2018). In contrast with the 2007 money judgment, the 2012 order enters no judgment in favor of petitioner's ex-spouse and by its terms provided her with no means of enforcing the judge's order. By its terms the 2012 order clearly is not a money judgment. The 2012 order is a contempt order to achieve the payment of alimony arrearages, as petitioner contends.

3.      Whether the 2012 Order Should Be Treated as a Money Judgment

Respondent contends that the 2012 order was (or should be treated as) a money judgment because FCA sec. 454(2)(a) (McKinney 2018) provides that the judge, upon a finding of failure by a party to comply with a lawful support order,

**[\*10]** "shall" enter a money judgment under FCA sec. 460. FCA sec. 454 provides

in pertinent part:

1. If a respondent is brought before the court for failure to obey any lawful order of support and if, after hearing, the court is satisfied by competent proof that the respondent has failed to obey any such order, the court may use any or all of the powers conferred upon it by this part. The court has the power to use any or all enforcement powers in every proceeding brought for violation of a court order under this part regardless of the relief requested in the petition.

2. Upon a finding that a respondent has failed to comply with any lawful order of support:

(a) the court shall enter a money judgment under section four hundred sixty of this article; and

\*    \*    \*    \*    \*    \*    \*

3. Upon a finding by the court that a respondent has willfully failed to obey any lawful order of support, the court shall order respondent to pay counsel fees to the attorney representing petitioner pursuant to section four hundred thirty-eight of this act and may in addition to or in lieu of any or all of the powers conferred in subdivision two of this section or any other section of law:

(a) commit the respondent to jail for a term not to exceed six months. \* \* \*

FCA sec. 460 provides in pertinent part:

1. Where the family court enters an order:

(a) requiring any party to provide for the support of another party, or child, or both; or

**[*11]**    (b) providing for the support or maintenance of a spouse or former spouse, or child, or both, on a referral from the supreme court in an action for divorce, separation, annulment or a proceeding for the determination of the custody of a minor by writ of habeas corpus or by petition and order to show cause; or

(c) enforcing or modifying an order or decree of a court of competent jurisdiction not of the state of New York providing for the support of the petitioner and/or child support; or

(d) awarding support under article five-B of this Act; or

(e) awarding counsel fees under this act; and the party defaults in paying any sum of money due as required by the order directing the payment thereof, the court, without regard to the amount due, shall make an order directing the entry of judgment for the amount of child support arrears, together with costs and disbursements.  The court shall make an order directing the entry of judgment for the amount of arrears of any other payments so directed, together with costs and disbursements, unless the defaulting party shows good cause for failure to make application for relief from the judgment or order directing such payment prior to the accrual of such arrears. * * *

Thus, respondent contends, in essence, that because FCA sec. 454 provides that the judge "shall" enter a money judgment, the 2012 order is (or should be treated as) a money judgment.

We disagree.  First, as just discussed, by its terms the 2012 order is not a money judgment.  Second, and more fundamentally, beyond the authority provided by FCA sec. 454, a judge of the Supreme Court of the State of New York, which issued the 2012 order, also has authority to find a party in contempt under the

**[*12]** circumstances present here and to impose a jail sentence if a mandated payment is not made. N.Y. C.P.L.R. 5210 (McKinney 2018) provides that "[e]very court in which a special proceeding to enforce a money judgment may be commenced, shall have power to punish a contempt of court committed with respect to an enforcement procedure." N.Y. Jud. Law sec. 753 (McKinney 2018) provides:

> A. A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases:
>
>     *     *     *     *     *     *     *
>
> 3. A party to the action or special proceeding, an attorney, counselor, or other person, for the non-payment of a sum of money, ordered or adjudged by the court to be paid, in a case where by law execution can not be awarded for the collection of such sum except as otherwise specifically provided by the civil practice law and rules; or for any other disobedience to a lawful mandate of the court.

As a court of record with the authority to enforce a money judgment, the Supreme Court of the State of New York, Nassau County, had contempt authority under both N.Y. C.P.L.R. 5210 and N.Y. Jud. Law sec. 753.[4]

---

[4]Respondent relies on <u>Iglicki v. Commissioner</u>, T.C. Memo. 2015-80, which involved a payment made pursuant to a money judgment. Having decided that the 2012 order was not a money judgment, <u>see</u> <u>supra</u> pp. 8-13, we need not consider

(continued...)

**[\*13]** 4.     <u>Conclusion</u>

On the basis of the foregoing, we hold that petitioners may deduct alimony

paid of $242,137 for 2012.

<u>Decision will be entered</u>

<u>for petitioners</u>.

---

[4](...continued)

<u>Iglicki</u>.