PAUL A. STROUD and RENDA S. STROUD, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Stroud v. Commissioner
Docket Nos. 28424-91, 30480-91, 30481-91
United States Tax Court
T.C. Memo 1993-317; 1993 Tax Ct. Memo LEXIS 316; 66 T.C.M. (CCH) 158; July 19, 1993, Filed *316 Decision will be entered for petitioner in docket No. 28424-91, decision will be entered under Rule 155 in docket No. 30480-91, and decision will be entered for respondent in docket No. 30481-91. For petitioners in docket No. 28424-91: Elton S. Lipnick. David K. Snider and Susan Nordmeyer (n.k.a. Susan L. Nordmeyer), [2] pro sese in docket No. 30480-91. Susan Nordmeyer, pro se in docket No. 30481-91. For respondent: Wanda Cohen. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Paul A. Stroud and Renda S. Stroud (Strouds), David K. Snider and Susan Snider (Sniders), and Susan Nordmeyer (Nordmeyer) separately petitioned this Court for a redetermination of respondent's determinations of a deficiency in their respective Federal income tax liabilities (hereinafter, unless otherwise noted, the Strouds, Sniders, and Nordmeyer are collectively referred to as petitioners). Following a joint motion by respondent under Rule 141(a), *317 [3] the three cases resulting from these petitions were consolidated into a single case for trial, briefing, and opinion. Pursuant to Rule 122(a), petitioners and respondent submitted the case to the Court without trial on the basis of the pleadings and the facts recited in a joint stipulation, with accompanying exhibits. Respondent determined deficiencies in petitioners' Federal income taxes as follows: Taxable Year 1986
1987
The Strouds
Docket No. 28424-91
--  $ 10,500.40
The Sniders
Docket No. 30480-91
$ 3,279.00
--  Nordmeyer
Docket No. 30481-91
--  5,381.00
Respondent also determined that the Sniders were liable for an $ 807 addition to tax for the 1986 taxable year under section 6651(a)(1). The issues for decision are whether: (1) The Sniders must include $ 19,998 in their 1986 income, *318 with respect to divorce-related payments that Susan Snider received from Paul Stroud in 1986. [4] We conclude they must. (2) Nordmeyer must include $ 19,998 in her 1987 income, with respect to divorce-related payments that she received from Paul Stroud in 1987. We conclude she must. (3) The Strouds are entitled to a $ 30,000 deduction from income in 1987, with respect to divorce-related payments made by Paul Stroud to Nordmeyer in 1987. We conclude they are. [5]
*319 FINDINGS OF FACT At the time the petitions were filed in this case, the Strouds and Susan Snider/Nordmeyer both lived in Huntington Beach, California; David Snider lived in McAllen, Texas. The facts in the joint stipulation and accompanying exhibits submitted in this case are incorporated herein by this reference. Paul Stroud and Susan Snider/Nordmeyer were married on January 21, 1970, and divorced on November 16, 1982. On December 21, 1982, Paul Stroud and Susan Snider/Nordmeyer executed a divorce agreement ("Agreement"). Section VII of the Agreement provided: A. Periodic Payments. The support payments provided for in Section VII are intended by both spouses to qualify as "periodic payments" as that term is defined in § 71(a) of the Internal Revenue Code of 1954, as amended (hereinafter referred to as "the Code"), and as such are intended to be includable in the gross income of the payee under § 71(a) of the Code and deductible by the payor under § 215(a) of the Code. The parties therefore contemplate that all provisions of Section VII will be interpreted in a manner consistent with that intention. The support obligation contained in Section VII is unrelated to *320 the division of property in this agreement, and it is not intended in any way to constitute a form of payment for any rights or interests in the estate of the parties. B. Amount of Payments. Husband agrees to pay to Wife periodic payments in the amounts and for the periods as shown below:
Monthly Payments
Annual Amount [6]
Year 1
$ 1,713.62
x 12
$ 20,563.42
Year 2
1,885.47
x 12
22,625.68
Year 3
2,074.38
x 12
24,892.56
Year 4
2,281.24
x 12
27,374.87
Year 5
2,508.66
x 12
30,103.96
Year 6
2,760.59
x 12
33,127.05
Year 7
3,037.42
x 12
36,448.99
Year 8
3,338.06
x 12
40,056.69
Year 9
3,671.49
x 12
44,057.87
The first payment being due and payable on the 15th day of January, 1983, and monthly payments in amounts shown above being due and payable on the same day of each month thereafter until terminated in accordance with the *321 provisions of this agreement. C. Nontransferability and Termination of Payments. This agreement to make periodic payments shall be unassignable and nontransferable. The obligation of Husband to make payment shall terminate immediately upon the death of either spouse or upon the inability of Stroud's Home Furnishings, Inc., to meet its contractual obligations to Husband.
After making monthly payments through May 1983, Paul Stroud ceased making any payments to Susan Snider/Nordmeyer under the Agreement. On March 9, 1984, she filed a lawsuit against him in the District Court of Hidalgo County, Texas, claiming a breach of the Agreement. The lawsuit centered on the meaning of the word "inability", as used in paragraph C, Sec. VII of the Agreement. More specifically, the parties disagreed on whether Stroud's Home Furnishings, Inc., had the ability to meet its contractual obligations to Paul Stroud from June 1983 through November 1986. While the jury was deliberating, the parties reached a basis for settlement. Subsequently, on December 9, 1986, the parties executed a compromise and settlement agreement ("Settlement"). The Settlement provided: (A) [Susan Snider/Nordmeyer] *322 will dismiss with prejudice this lawsuit and will settle, compromise and unconditionally release any and all causes of action and claims, present and future, against Paul Stroud * * *, which may have accrued to her benefit as a result of the provisions contained in Sec. VII of the Agreement Incident to Divorce signed on [December 21, 1982]. (B) In consideration for such dismissal and release by [Susan Snider/Nordmeyer], Paul Stroud shall pay [her] the sum of $ 95,000.00 as follows: 1. $ 30,000.00 in cash to be paid on or before December 5, 1986. 2. $ 65,000.00 to be paid in 26 equal monthly installments of $ 2,500.00 each, beginning on or before January 5, 1987, and monthly thereafter on the 5th day of each succeeding month until the total sum of $ 65,000.00 shall have been paid.
The Settlement also provided that the "agreement to pay [Susan Snider/Nordmeyer] the sum of $ 95,000 is in substitution of and completely replaces the schedule contained in paragraph B, Section VII of the Agreement", "all other sections contained in the Agreement * * * shall remain in full force and effect", and "the Agreement shall survive the death or disability of" Susan Snider/Nordmeyer. *323 Following the Settlement, Paul Stroud paid: (1) $ 30,000 to Susan Snider in 1986, and (2) $ 30,000 to Nordmeyer in 1987. The parties stipulated that "At the time [of the Settlement], the total periodic payments in arrears exceeded $ 60,000". The Sniders filed a joint 1986 Federal income tax return. This return did not include in gross income any amount as alimony received by Susan Snider from Paul Stroud. On October 3, 1991, respondent issued a notice of deficiency to the Sniders for the 1986 taxable year. This notice reflected respondent's determination that: (1) Susan Snider received alimony income of $ 19,998 from Paul Stroud during 1986, (2) the Sniders were entitled to no part of a $ 260 earned income credit claimed on their 1986 return, [7] and (3) the Sniders were liable for an $ 807 addition to tax under section 6651(a)(1) because they did not file timely a 1986 Federal income tax return. [8]
*324 The Strouds filed a joint 1987 Federal income tax return reporting a $ 30,000 deduction for alimony paid by Paul Stroud to Nordmeyer during 1987. On October 3, 1991, respondent issued a notice of deficiency to the Strouds for the 1987 taxable year reflecting respondent's determination that the Strouds were not entitled to this $ 30,000 deduction. Nordmeyer filed her 1987 Federal income tax return; this return did not report any alimony received in gross income. On October 4, 1991, respondent issued a notice of deficiency to Nordmeyer for the 1987 taxable year reflecting respondent's determination that: (1) Nordmeyer received alimony income of $ 19,998 from Paul Stroud during 1987, and (2) a 1987 child care credit was allowable in the amount of $ 84, rather than the $ 122 amount claimed on the return. [9]
OPINION Respondent has determined deficiencies in *325 the 1986 Federal income tax of the Sniders, and the 1987 Federal income taxes of both the Strouds and Nordmeyer. These deficiencies are contained in the separate notices of deficiency issued to these taxpayers in October 1991. The Strouds, Sniders, and Nordmeyer all have the burden of proving that respondent's determinations in their respective notice of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Prior to the enactment of section 422 of the Deficit Reduction Act of 1984 (DRA), Pub. L. 98-369, 98 Stat. 494, 795, gross income generally included "periodic payments" received by a divorced spouse, for his or her support, under a divorce decree. Sec. 71(a)(1). The payor of periodic payments also was allowed a deduction for these amounts in the taxable year of payment. Sec. 215(a). For these purposes, the term "periodic payments" generally did not include installment payments unless the installment payments ended more than 10 years after the date of the decree, or 10 years or less after the date of the decree -- if the payments were also (1) subject to a contingency for the death of either spouse, remarriage *326 of the recipient spouse, or change in the economic status of either spouse, and (2) in the nature of alimony or an allowance for support. Sec. 71(c); see also sec. 1.71-1(d)(3), Income Tax Regs.
The DRA substantially and dramatically changed the alimony rules effective for divorce decrees executed: (1) After December 31, 1984, or (2) before January 1, 1985, if the decree was modified on or after that date and the modification expressly provided that the amendments made by the DRA apply to the modification. Sec. 422(e)(1) and (2) of the DRA, Pub. L. 98-369, 98 Stat. 494, 798; see also Libman v. Commissioner, T.C. Memo. 1990-629. In the case at hand, the Agreement was executed on December 21, 1982, the Settlement was executed on December 9, 1986, and the Settlement did not expressly reference the amendments made by the DRA. Accordingly, the DRA's amendments to the alimony provisions of the Internal Revenue Code do not apply to the instant case, and we apply the law prior to the enactment of the DRA to the divorce decree at hand. The parties agree that any payments made by Paul Stroud to Susan Snider/Nordmeyer under the Agreement were "periodic payments", *327 deductible by him and taxable to her. The dispute is whether the Settlement alters the tax consequences with respect to the 1986 and 1987 payments. Respondent argues that it does, and primarily cites Loverin v. Commissioner, 10 T.C. 406 (1948), and Lehrer v. Commissioner, T.C. Memo. 1980-256, to support her contention that the 1986 and 1987 payments were made under the Settlement and not the Agreement. In Lehrer v. Commissioner, supra, the Court cited Loverin v. Commissioner, supra, and stated that "where a separate contractual instrument has been entered into by the parties modifying, changing or replacing the provisions of the initial agreement with respect to alimony, the deductibility of a payment made pursuant to the second agreement is governed by the provisions of the second instrument." If the 1986 and 1987 payments were paid by Paul Stroud to Susan Snider/Nordmeyer under the second instrument in this case (i.e., the Settlement), these payments would not be "periodic payments" because payments under the Settlement were for less than 10 years *328 and were not subject to a contingency. See sec. 71(c); see also sec. 1.71-1(d)(3), Income Tax Regs. Accordingly, these payments would neither be deductible by Paul Stroud, nor includable in the income of Susan Snider/Nordmeyer. The Strouds, on the other hand, argue that the Settlement did not alter the tax consequences of the 1986 and 1987 payments under the Agreement. More specifically, the Strouds contend, the 1986 and 1987 payments of $ 30,000 from Paul Stroud to Susan Snider/Nordmeyer were payments of arrearages of periodic payments under the Agreement, and, as such, retained the same character as they had under the Agreement (i.e., deductible by him and taxable to her). See, e.g., Davis v. Commissioner, 41 T.C. 815, 820 (1964) ("where a lump sum is paid in settlement of arrearages in alimony the payment retains the characteristics of the original payments for which it is substituted, and if the latter qualified as periodic payments the former does too"). We agree with the Strouds. The parties stipulated that, at the time of the Settlement, Paul Stroud's periodic payments under the Agreement were more than $ 60,000 in arrears. An amount is *329 "in arrears" if it is an unpaid and overdue debt. Webster's New World Dictionary 76 (3d college ed. 1988). Because at the time of the Settlement, Paul Stroud owed at least $ 60,000 to Susan Snider/Nordmeyer under the Agreement, we conclude that at least the first $ 60,000 he paid to her after the Settlement is attributed to (and retained the character of) the periodic payments in arrears at that time. Holloway v. United States, 428 F.2d 140, 143 (9th Cir. 1970) (if a lump-sum payment is made to satisfy both arrearages of alimony and future alimony, and the "nub" of the payment is for the arrearages, the payment is deductible to the extent of the arrearages); Olster v. Commissioner, 79 T.C. 456, 463 (1982) (payment of a lump-sum amount in extinguishment of both alimony arrearages and future alimony obligations is considered in satisfaction of the unpaid and accrued alimony to the extent of the arrearages, absent a specific allocation to the future alimony obligations), affd. 751 F.2d 1168 (11th Cir. 1985); Davis v. Commissioner, supra at 820. In this regard, *330 we note that the record does not contain an "unequivocal basis for allocating [the] lump-sum payment between alimony arrearages and future alimony obligations". Olster v. Commissioner, supra at 463. Accordingly, the $ 30,000 payments from Paul Stroud to Susan Snider/Nordmeyer in 1986 and 1987 (or, in other words, the first $ 60,000 paid after the Settlement) were periodic payments deductible by him and taxable to her. We have considered all other arguments in this case, and have found them unpersuasive. For the foregoing reasons, Decision will be entered for petitioner in docket No. 28424-91, decision will be entered under Rule 155 in docket No. 30480-91, and decision will be entered for respondent in docket No. 30481-91. Footnotes
1. Cases of the following petitioners are consolidated herewith: David K. Snider and Susan N. Snider, n.k.a. Susan N. Nordmeyer, docket No. 30480-91; and Susan L. Nordmeyer, docket No. 30481-91. Susan L. Nordmeyer is the same woman as Susan N. Nordmeyer; the parties have not explained the different middle initials. Hereinafter, we will refer to both Susan L. Nordmeyer and Susan N. Nordmeyer as Susan Nordmeyer.↩
2. During the 1986 taxable year, a year in issue, Susan Nordmeyer was known as Susan N. Snider. Hereinafter, for simplicity and convenience, we will refer to Susan Nordmeyer as Susan Snider solely for purposes of the 1986 taxable year.↩
3. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.↩
4. Respondent stipulated that the Sniders may compute their 1986 taxable income by income averaging. See secs. 1301-1305. The parties agree that, solely for purposes of income averaging, Nordmeyer's 1983 taxable income is increased by $ 8,568.10. A computation under Rule 155 will be necessary to effectuate this stipulation.↩
5. The parties agree that Paul Stroud paid $ 30,000 to Susan Snider/Nordmeyer in both 1986 and 1987. Respondent's notices of deficiency issued to the Sniders and Nordmeyer alleged that Susan Snider/Nordmeyer failed to include $ 19,998 of this amount in her gross income. Respondent's brief explains that the difference in these two figures is attributable to attorney fees paid by Susan Snider/Nordmeyer to prosecute a lawsuit against Paul Stroud in connection with their divorce decree.↩
6. The annual amount column approximately equals the monthly payments multiplied by 12; the minor differences are attributable to rounding errors.↩
7. The Sniders stipulated that they were not entitled to a $ 260 earned income credit for 1986.↩
8. The Sniders stipulated that they failed to file timely their 1986 Federal income tax return, and such failure was not due to reasonable cause. Accordingly, the addition to tax under sec. 6651(a)(1) is applicable.↩
9. Respondent's reduction in Nordmeyer's 1987 child care credit resulted automatically from respondent's adjustment to Nordmeyer's 1987 adjusted gross income.↩