T.C. Summary Opinion 2012-103

UNITED STATES TAX COURT

GARY WAYNE DOOLITTLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19072-11S. Filed October 25, 2012.

Gary Wayne Doolittle, pro se.

<u>Robert V. Boeshaar</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $1,485 and an accuracy-related penalty under section 6662(a) of $297 against petitioner for the taxable year 2008.

The issues[1] for decision are whether petitioner: (1) is entitled to a claimed deduction for alimony; and (2) is liable for a section 6662(a) accuracy-related penalty.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in the State of Washington when he filed his petition.

Petitioner served in the military from 1974 to 1994. He and his former wife were married in 1974 and have at least one child, B.D.[2] Petitioner and his former wife legally separated in 2003. On April 23, 2003, the Superior Court of the State of Washington, in and for the County of Snohomish (superior court), filed a decree

---

[1]Other adjustments made in the notice of deficiency are computational and will be decided in accordance with the Court's opinion in this case.

[2]The Court redacts the names of minor children. See Rule 27(3).

of legal separation (decree) that provides in paragraph 3.7, "Spousal Maintenance", that petitioner will pay spousal maintenance of $900 a month. The spousal maintenance payments were to end when B.D. reached age 23 or on December 31, 2010, "to cover college costs" and family living expenses. Petitioner's son B.D. would reach the age of 23 on December 18, 2010.

The details of the spousal maintenance in paragraph 3.7 of the decree are set forth in a document denominated "Exhibit A", which the superior court filed on April 28, 2003. Exhibit A provides that petitioner will make payments of $900 a month from his military disability pay through December 31, 2010, "to help with family support." Exhibit A does not state that petitioner must pay spousal maintenance until B.D. reaches age 23. There is, in addition to exhibit A, a document entitled "Regarding Spousal Maintenance" that repeats the language of exhibit A.

On April 30, 2003, the superior court also filed an order for child support (order). Under the order petitioner was required to pay child support of $900 a month. As was the case with spousal maintenance, the child support payments were to end on December 31, 2010. This amount was a deviation from the standard calculation as agreed between petitioner and his former wife so that B.D. "can be covered by child support through college and help with college costs".

The Decree was converted to a decree for dissolution in January 2007.

On January 18, 2008, the superior court filed an agreed order that provides that petitioner and his former wife agree to execute a qualified domestic relations order (QDRO) under which petitioner would pay $52,000 from a Wedbush Morgan Securities account to his former wife within 30 days. Petitioner is the "Participant" in the plan and his former wife is named the "Alternate Payee" for purposes of the QDRO. The payment was to be made out of petitioner's plan benefits. The agreed order provides that the QDRO will satisfy all of petitioner's "child support including post secondary support and spousal maintenance through 2010." It also provides that "This agreement also settles all issues and arguements [sic] pertaining to * * * [petitioner's] IRA, WA State retirement, and Military retirement/disability." The superior court filed the QDRO on March 14, 2008, which contains language conforming to the superior court order of January 18, 2008. It also contains a provision stating that petitioner's former wife "assumes sole responsibility for the tax consequences" of the payment.

On January 19, 2010, the superior court filed a satisfaction of judgment. Petitioner is listed as the judgment debtor, his former wife is listed as the judgment creditor, and an "X" is marked next to the phrase "Full Satisfaction of the judgment including costs and/or interest".

Petitioner filed his 2008 Form 1040, U.S. Individual Income Tax Return, and claimed a deduction for alimony paid of $10,800, i.e. the $900 a month he was required to pay his former wife in spousal maintenance for 2008.

Respondent issued petitioner a notice of deficiency in which he disallowed petitioner's claimed deduction for alimony paid of $10,800 because "[l]ump-sum cash paid as a property settlement is not deductible as alimony" and determined that petitioner was liable for a section 6662(a) accuracy-related penalty.

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). As petitioner did not argue or prove that the requirements of section 7491(a) have been met, the burden of proof does not shift to respondent.

## I. Deduction for Alimony Paid

Generally, alimony payments are taxable to the recipient and deductible by the payor. Secs. 61(a)(8), 71(a), 215(a). Section 215(b) defines alimony or

separate maintenance as any "payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

Section 71(b) provides a four-step inquiry for determining whether a cash payment is alimony:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.-- For purposes of this section--
>
> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income * * * and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Payments are deductible as alimony only if all four requirements of section 71(b)(1) are met. Jaffe v. Commissioner, T.C. Memo. 1999-196.

Respondent agrees that petitioner's payments under the decree for 2008 meet the four requirements previously stated. Respondent, however, points to the provisions of section 71(c) as impediments to the deductibility of petitioner's payments to his former wife. Under section 71(c) any part of any payment that the divorce or separation instrument fixes as payable for the support of the payor's children is not alimony. Further, if any amount in the instrument will be reduced on the happening of a contingency relating to a child, such as reaching a specified age or leaving school, or reduced at a time associated with such a contingency, the reduced amount will be treated as a fixed amount payable for child support.

Respondent emphasizes that the decree specifically states that petitioner's "spousal maintenance" payments of $900 per month continue until B.D. reaches the age of 23 or December 31, 2010. Although the related documents, exhibit A and Regarding Spousal Maintenance, do not reference B.D.'s birthday, they do reference December 31, 2010, a date that petitioner admits was chosen for its proximity to B.D.'s birthday and because it would be after his son's "college period".

Petitioner argues that the spousal maintenance provision has nothing to do with child support; there is a separate agreement specifically for child support. Petitioner's argument fails because a payment may be treated as fixed for payment

of child support even if other separate payments are specifically designated as child support. Sec. 1.71-1T(c) , Q&A-16, Temporary Income Tax Regs., 49 Fed. Reg. 34455, 34456 (Aug. 31, 1984). The Court agrees with respondent that the $900-a-month spousal maintenance payments made under the decree and associated documents were to be reduced on the happening of a contingency relating to B.D.'s reaching a specified age or finishing college or reduced at a time associated with such a contingency, and the reduced amount must be treated as a fixed amount payable for child support and not alimony. Id. Q&A-17.

When parties, however, enter into a separate contractual agreement that modifies or replaces the provisions of the initial agreement with respect to alimony, the second agreement controls the deductibility of the payment. Bernard v. Commissioner, 87 T.C. 1029, 1034 (1986); Loverin v. Commissioner, 10 T.C. 406 (1948); Stroud v. Commissioner, T.C. Memo. 1993-317; Lehrer v. Commissioner, T.C. Memo. 1980-256.

The payments under the decree were displaced under section 71(b) by the lump-sum payment of the QDRO.[3] See Bernard v. Commissioner, 87 T.C. at 1034;

---

[3]The parties agree that the alimony payments called for in the decree meet all of the requirements of sec. 71(b). Neither party argued whether the QDRO met the requirements of sec. 71(b), although the notice of deficiency states that it does not.

Loverin v. Commissioner, 10 T.C. 406; Stroud v. Commissioner, T.C. Memo. 1993-317; Lehrer v. Commissioner, T.C. Memo. 1980-256.

Petitioner has not shown that his plan was not a qualified plan. See sec. 401(a). A qualified plan is a trust. Sec. 401(a), (f), (g). The QDRO required petitioner to have a distribution made from his plan benefits to his former wife. Petitioner's former wife was named as an "alternate payee" in the QDRO. An alternate payee includes a spouse or former spouse who is named by a domestic relations order as having the right to receive all or a portion of the benefits payable to a participant in a plan. Sec. 414(p)(8). For purposes of subsection (a) of section 402, Taxability of Beneficiary of Employee's Trust, and section 72, Annuities, an alternate payee who is the spouse or former spouse of a participant of a qualified retirement plan is treated as the distributee of any distribution or payment under a QDRO. Sec. 402(e)(1). Under section 402(a), amounts distributed to a distributee by a qualified pension, profit-sharing, or stock bonus plan are taxable to the distributee (in this case, petitioner's former wife) under section 72 in the year of the distribution.

Section 215 defines alimony as a payment that meets the requirements of section 71(b) which is includible in the income of the recipient "under section 71." Petitioner's former wife is a distributee required to include the $52,000 plan

distribution in her income under section 72. More importantly, the alimony deduction of section 215 is allowed to "individuals" and is deductible only by the obligor spouse, "not allowed to an estate, trust, corporation, or any other person who may pay the alimony obligation of such obligor spouse." Sec. 215(a); sec. 1.215-1(b). Income Tax Regs.; see also secs. 215(d), 682(a). Petitioner's obligation was paid by a trust, not by him. See Amarasinghe v. Commissioner, T.C. Memo. 2007-333. He is not entitled to the claimed alimony deduction.

## II.    Accuracy-Related Penalty

Respondent determined an accuracy-related penalty under section 6662(a) and (b)(1) and (2) for underpayments attributable to negligence or a substantial understatement of income tax. Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, aff'd, 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or the addition to tax is appropriate. Higbee v. Commissioner, 116 T.C. at 446.

Respondent determined that for 2008 petitioner underpaid a portion of his income tax because of negligence or disregard of rules or regulations and that there was a substantial understatement of income tax.

Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on the portion of an underpayment of tax attributable to any one of various factors, including negligence or disregard of rules or regulations and a substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

A "substantial understatement" includes an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer." The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Petitioner reported a tax liability of $378. Petitioner's actual tax liability is $2,085. Petitioner does not have a substantial understatement of income tax for 2008 since the understatement amount will not exceed the greater of 10% of the tax required to be shown on the return or $5,000. But petitioner improperly deducted $10,800 as alimony on his Federal income tax return.

The Court concludes that respondent has produced sufficient evidence to show that the accuracy-related penalty under section 6662 is appropriate for 2008.

The Court finds, however, that the underpayment of tax was due to an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances.

Respondent's determination of the accuracy-related penalty under section 6662(a) for 2008 is not sustained.

To reflect the foregoing,

Decision will be entered

for respondent as to the

deficiency and for petitioner as

to the section 6662(a) penalty.