T.C. Summary Opinion 2012-63

UNITED STATES TAX COURT

JAMES P. CHIAVACCI AND JOYCE L. CHIAVACCI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11157-10S.                          Filed July 2, 2012.

Donald F. Brown, for petitioners.

Erika B. Cormier, for respondent.

SUMMARY OPINION

MARVEL, Judge:  This case was heard pursuant to the provisions of section

7463.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code, as amended, in effect for the year in issue, and all Rule references

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioners' 2007 Federal income tax of $6,600 and a section 6662(a) accuracy-related penalty of $1,320. After concessions,[2] the issues for decision are: (1) whether petitioners are entitled to an additional $20,000 deduction for alimony paid during 2007; and (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

---

[1](...continued)
are to the Tax Court Rules of Practice and Procedure. Monetary amounts have been rounded to the nearest dollar.

[2]Respondent concedes that petitioners are entitled to a $4,000 deduction for alimony paid. The $4,000 amount represents Mr. Chiavacci's $500 monthly alimony payments for January through August 2007. Respondent's concession results in a $5,002 deficiency and a $1,000 sec. 6662(a) penalty.

In the notice of deficiency respondent disallowed $2,000 of petitioners' claimed deduction for tuition and fees and $112 of petitioners' itemized deductions. In their petition, petitioners assign error only to respondent's disallowance of the claimed alimony deduction. We deem any issue not raised in the assignments of error in the petition conceded. See Rule 34(b)(4). Accordingly, we conclude that petitioners have conceded the other adjustments in the notice of deficiency.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts is incorporated herein by this reference. Petitioners resided in Maine when they filed their petition.

### Mr. Chiavacci's Divorce Decree

James P. Chiavacci was married to Leigh A. Charles. He filed for divorce from Ms. Charles in the District Court of Bangor, Maine (district court). On January 3, 1994, while their divorce proceedings were pending, Mr. Chiavacci and Ms. Charles executed an agreement relating to their "marital property rights, support and other rights" (1994 agreement). On January 10, 1994, the district court entered a decree of divorce dissolving the marriage of Mr. Chiavacci and Ms. Charles and approving the 1994 agreement, as well as a child support order, an alimony order, and immediate income withholding orders, all of which were incorporated into the decree of divorce.

Among other things, the 1994 agreement provided that Mr. Chiavacci had to pay Ms. Charles spousal support. Under section 4, "ALIMONY", they agreed that "[t]he Husband shall pay to the Wife the sum of Five Hundred Dollars ($500.00) per month as alimony, first payment to be made on January 31, 1994, payment to cease upon death or remarriage of the Wife." The divorce decree also provided that Mr.

Chiavacci had to pay Ms. Charles child support each month starting January 31, 1994.[3]

Mr. Chiavacci's 2007 Payment Obligations and Payments

From January through August 2007 Mr. Chiavacci paid Ms. Charles alimony of $500 per month.

On April 2, 2007, Mr. Chiavacci filed a motion with the district court requesting modification of his alimony obligations to Ms. Charles. In the motion Mr. Chiavacci requested that the district court eliminate or decrease his alimony obligations because of changes in circumstances. Ms. Charles subsequently filed an objection to Mr. Chiavacci's motion to modify his alimony obligations.

Mr. Chiavacci and Ms. Charles entered into negotiations and eventually reached a settlement agreement whereby Mr. Chiavacci would make a one-time lump-sum payment of $20,000 to Ms. Charles in exchange for a release of his future spousal support obligations (2007 settlement agreement). On September 4, 2007, Mr. Chiavacci purchased a cashier's check for $20,000. On September 11, 2007, Mr. Chiavacci's attorney, Donald F. Brown, mailed the cashier's check to Ms. Charles' attorney, Martha Harris. In an attached letter, Mr. Brown stated that,

---

[3]On August 23, 2001, the district court entered a child support order modifying Mr. Chiavacci's child support obligations.

during negotiations, Ms. Harris agreed to draft a document asking the district court to order that Mr. Chiavacci's alimony payment obligation had been terminated, effective immediately.

On September 13, 2007, the district court entered an order amending the divorce judgment (amending order). The amending order contains the following statement: "By agreement of the parties, Spousal Support is terminated effective September 2, 2007. In all other respects, the Divorce Judgment dated January 10, 1994, as amended on August 31, 2001, remains in full force and effect." The amending order makes no reference to Mr. Chiavacci's $20,000 payment to Ms. Charles.

Petitioners' 2007 Return; Notice of Deficiency

Petitioners jointly filed a Form 1040, U.S. Individual Income Tax Return, for 2007 on which they claimed an alimony deduction of $24,000 for alimony Mr. Chiavacci claimed he paid to Ms. Charles. On February 17, 2010, respondent mailed petitioners a notice of deficiency disallowing the alimony deduction in full.

Discussion

Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are

erroneous. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). The burden of proof shifts to the Commissioner, however, if the taxpayer produces credible evidence to support the deduction or position, the taxpayer complied with the substantiation requirements, and the taxpayer cooperated with the Secretary[4] with regard to all reasonable requests for information. Sec. 7491(a); <u>see also</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440-441 (2001).

Petitioners do not contend that section 7491(c) applies. Furthermore, because the relevant facts are stipulated and only a legal issue remains, we need not decide whether the burden of proof shifts to respondent. <u>See</u> <u>Estate of Morgens v. Commissioner</u>, 133 T.C. 402, 409 (2009), <u>aff'd</u>, 678 F.3d 769 (9th Cir. 2012); <u>see also</u> <u>Waamiq-Ali v. Commissioner</u>, T.C. Memo. 2010-86.

<u>Petitioners' Alimony Deduction</u>

Deductions are a matter of legislative grace, and a taxpayer ordinarily must prove that he is entitled to the claimed deduction. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992). A taxpayer who makes alimony payments

---

[4]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

that satisfy the requirements of section 215[5] may deduct those payments on his income tax return for the year in which the payments are made. Sec. 215. Section 71(b)(1) defines the term "alimony" as follows:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>>
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>>>
>>> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any

---

[5]Sec. 215 provides that a taxpayer who makes "alimony or separate maintenance payments", as defined in sec. 71(b), may deduct those payments for the year in which the payments are made.

> payment (in cash or property) as a substitute for
> such payments after the death of the payee spouse.

All four requirements of section 71(b)(1) must be met for payments to qualify as alimony or separate maintenance.  Jaffe v. Commissioner, T.C. Memo. 1999-196.

The term "divorce of separation instrument" includes "a decree of divorce or separate maintenance or a written instrument incident to such a decree".  Sec. 71(b)(2)(A).  This Court previously has considered the tax treatment of payments made pursuant to a separate contractual agreement.  As we have stated:  "[W]here a separate contractual instrument has been entered into by the parties modifying, changing or replacing the provisions of the initial agreement with respect to alimony, the deductibility of a payment made pursuant to the second agreement is governed by the provisions of the second instrument."  Lehrer v. Commissioner, T.C. Memo. 1980-256; see also Bernard v. Commissioner, 87 T.C. 1029, 1034 (1986); Loverin v. Commissioner, 10 T.C. 406 (1948).  The portion of the lump-sum payment attributable to past, unpaid, alimony payments retains the tax character of the original payments made pursuant to the divorce decree.  Bernard v. Commissioner, 87 T.C. at 1037; see also Berry v. Commissioner, T.C. Memo. 2005-91.  The tax treatment of the portion of the lump-sum payment attributable to future alimony

obligations does not depend on the tax character of the original payments.  <u>Bernard v. Commissioner</u>, 87 T.C. at 1037.

The parties stipulated that Mr. Chiavacci and Ms. Charles were not members of the same household in 2007 and therefore the payment satisfies the requirements of section 71(b)(1)(C).  The parties disagree, however, as to whether the other requirements of section 71(b)(1) have been satisfied.  We turn first to the termination requirement of section 71(b)(1)(D).  Because Mr. Chiavacci's $20,000 payment was not attributable to past, unpaid alimony obligations, we look to the 2007 settlement agreement in evaluating whether the payment satisfied the termination requirement of section 71(b)(1)(D).

Section 71(b)(1)(D) requires that there be no liability to make alimony or separate maintenance payments for any period after the death of the payee spouse.  If the divorce decree or relevant instrument does not expressly state that the payment obligation terminates upon the death of the payee spouse, the payment will qualify as alimony provided that the termination of the obligation would occur upon the death of the payee spouse by operation of State law.  <u>See</u> <u>Hoover v. Commissioner</u>, 102 F.3d 842, 845-846 (6th Cir. 1996), <u>aff'g</u> T.C. Memo. 1995-183.

With respect to the 2007 settlement agreement, the record contains only the letter from Mr. Brown to Ms. Harris. The letter does not expressly state that the payment obligation terminates upon the death of Ms. Charles. Although the divorce decree provides that spousal support would terminate upon Ms. Charles' death, the district court's amending order did not incorporate the 2007 settlement agreement into the divorce decree.[6] The district court's amending order made no reference to the 2007 settlement agreement or the terms thereof. Consequently, we must decide whether the payment obligation would terminate upon the death of Ms. Charles by operation of Maine law.

Under Maine law, the obligation to make a spousal support payment "ceases upon the death of either the payee or the payor with respect to any payment not yet due and owing as of the date of death." Me. Rev. Stat. Ann. tit. 19-A, sec. 951-A(8) (2012). If a court awards a lump-sum spousal support payment,[7] the payment is due and owing upon the entry of a final judgment. See Chow v. Chow, 704 A.2d

---

[6]The amending order provided that, except for the termination of "Spousal Support", the divorce judgment remained in full force and effect. Therefore, the amending order effectively excised the "ALIMONY" section of the 1994 agreement, eliminating the provision that spousal support would terminate upon Ms. Charles' death.

[7]Maine law provides for lump-sum spousal support payments. See Me. Rev. Stat. Ann. tit. 19-A, sec. 951-A(3) (2012); Hebert v. Hebert, 475 A.2d 422, 425 (Me. 1984).

323 (Me. 1997) (holding that interest on a lump-sum alimony award is calculated as of the date of the judgment); see also Brown v. Habrle, 1 A.3d 401, 405-406 (Me. 2010) (holding that postjudgment interest accrues from the date of entry of judgment). Once the payment is due and owing, the payor has a personal obligation to make payment and the payee has a right to receive payment. See Fitzgerald v. Trueworthy, 476 A.2d 183, 184-185 (Me. 1984). Under Maine law, "[n]o personal action or cause of action is lost by the death of either party". Me. Rev. Stat. Ann. tit. 18-A, sec. 3-817(a) (2012).

Although Ms. Charles received the $20,000 lump-sum payment pursuant to the 2007 settlement agreement rather than a court order, we believe the same analysis applies. Once Mr. Chiavacci and Ms. Charles entered into the 2007 settlement agreement, Mr. Chiavacci had a personal obligation to make the $20,000 payment to Ms. Charles. Mr. Chiavacci's personal obligation to make the payment would have continued if Ms. Charles had died before payment of the $20,000. See Chow, 704 A.2d at 323-324; Fitzgerald, 476 A.2d at 184-185; Hardy v. Asbury, No. Civ.A. RE-03-013, 2004 WL 1434518 (Me. Super. Ct. May 24, 2004).

Because Mr. Chiavacci would have been liable to make payment even after the death of Ms. Charles, his $20,000 payment does not satisfy the termination

requirement of section 71(b)(1)(D). Since the payment fails to satisfy the termination requirement, we need not address whether the section 71(b)(1)(A) and (B) requirements are met. The $20,000 payment is not deductible by petitioners.

Accuracy-Related Penalty Under Section 6662

Section 6662 authorizes the Commissioner to impose a penalty on an underpayment of tax that is attributable to one or more of the following: (1) negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, (3) any substantial valuation misstatement, (4) any substantial overstatement of pension liabilities, and (5) any substantial estate or gift tax valuation understatement. Sec. 6662(a) and (b). Only one section 6662 accuracy-related penalty may be imposed with respect to any given portion of an underpayment, even if that portion is attributable to more than one of the types of conduct listed in section 6662(b). See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 187 (2009), aff'd, 408 Fed. Appx. 908 (6th Cir. 2010); sec. 1.6662-2(c), Income Tax Regs.

Section 7491(c) provides that the Commissioner bears the initial burden of production with respect to the taxpayer's liability for the section 6662 penalty; i.e., the Commissioner must first introduce sufficient evidence to establish that a section 6662 penalty is appropriate. See also Higbee v. Commissioner, 116 T.C. at 446-

447. Once the Commissioner meets his burden, the taxpayer must come forward with evidence sufficient to persuade this Court that the determination is incorrect. Id.

Respondent contends that petitioners are liable for the section 6662(a) accuracy-related penalty because the underpayment of tax is due to one or more of the following: (1) substantial understatement of income tax, (2) negligence or disregard of the rules or regulations, or (3) substantial valuation misstatement. However, respondent does not contend that any valuation misstatement made by petitioners is a gross valuation misstatement within the meaning of section 6662(h).

We turn first to respondent's contention that the section 6662(a) penalty should be imposed because the underpayment is attributable to petitioners' substantial understatement of income tax. For a taxpayer other than a C corporation, a substantial understatement is any understatement that exceeds 10% of the tax required to be shown on the return for the year or $5,000, whichever is greater. Sec. 6662(d)(1).

Respondent satisfied his burden of production under section 7491(c) by showing that petitioners' understatement of tax exceeded the greater of 10% of the

amount of tax required to be shown on the return or $5,000. Thus, petitioners must prove that respondent's determination to impose the penalty is inappropriate.

A taxpayer may avoid the imposition of a section 6662(a) penalty if he demonstrates that he had a reasonable basis for the underpayment and that he acted in good faith with respect to the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. Whether a taxpayer acted with reasonable cause and in good faith is determined on a case-by-case basis, taking into account all relevant facts and circumstances, including the taxpayer's experience, knowledge, and education. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners neither argued that they acted nor introduced any evidence to show that they acted with reasonable cause and in good faith with respect to the underpayment. Consequently, we sustain respondent's determination with respect to the section 6662(a) accuracy-related penalty.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.